## H. MURPHY v. J. J. TERRELL, COMMISSIONER, ET AL.

No. 1616. Decided March 6, 1907.

**1.—Sale of School Land—Attacking for Nonsettlement—Limitation.**

The limitation requiring suit to be brought in one year to test the right of a purchaser of school land, by one claiming to purchase or lease that which had been sold or let to another (Acts 29th Leg., Reg. Sess., p. 35) applied not only to the case of a claimant seeking to purchase the particular land (wherein the first purchaser was alleged to have lost his rights by failure to make settlement), but to one attacking such first purchaser's title in order to disprove his right to purchase, as holder thereof, without actual settlement, additional lands, which were also applied for by the party so attacking such title. (Pp. 399, 400.)

**2.—Same—Mandamus—Question of Fact.**

The answer of a corespondent to an application for mandamus against the Commissioner of the General Land Office, which denied applicant's right to pur-

chase the additional land claimed by him on the ground that he had never actually settled on his original section, was insufficient to raise a question of fact depriving the Supreme Court of Jurisdiction, where it showed that the corespondent was barred by limitation, under chapter 29, Acts of the Twenty–ninth Legislature, from raising such question as to relator's title.    (Pp. 398–400.)

### 3.—Same—Raising Question by State.

The State, or the Land Commissioner, though not barred by limitation (Acts 29th Leg., Reg. Sess., ch. 29, sec. 2, p. 35), could not, while taking no action to avoid a purchaser's title to his original section on the ground of nonsettlement, assert such ground of avoidance as depriving him of one of the incidents of an ownership which it recognized—the right to buy additional sections without settlement.    (P. 400.)

### 4.—School Land—Purchaser—Assignee of Lease.

Where land came on the market September 1, 1905, under chapter 103 of the Acts of the Twenty–ninth Legislature, the lessee or assignee of a lease, the term of which expired on August 1, 1905, had no right to purchase as such lessee or assignee under sections 5 and 11 of that act (Laws 1905, pp. 163, 166).    (Pp. 401, 402.)

Original application to the Supreme Court for writ of mandamus against the Commissioner of the General Land Office, Mabel Tillman, the adverse claimant of the land in controversy, being made corespondent.

*James & Yeiser,* for relator.

*R. V. Davidson,* Attorney-General, and *Wm. E. Hawkins,* Assistant, for respondent Terrell.

*Cornell & Wardlaw,* for respondent Tillman.

WILLIAMS, Associate Justice.—This is an original application for a mandamus to compel the respondent, as Commissioner of the General Land Office, to award to relator three sections of school land upon his applications to purchase them, in addition to a section which has been awarded to him for his home and as to which his contract is in good standing.   The corespondent, Mabel Tillman, is joined as the purchaser to whom the respondent has awarded the three sections in controversy.

The defensive pleadings attempt to oust the jurisdiction of this court by making an issue of fact as to relator's settlement upon and occupancy of his home section, not otherwise involved in the controversy, and it becomes necessary that we determine whether or not such issue is so raised as to make it material to the decision of the case.   If so, as we have no power to settle disputed questions of fact, the cause would have to be dismissed.

Relator's applications to purchase all four of the sections were pending when they came on the market, September 1, 1905.   The section applied for as a home was awarded to him December 2, 1905, but the Commissioner refused to accept his three other applications because he thought that the corespondent, who had on file applications to purchase the three sections in question, was entitled to preference as the assignee of an entire lease.

In his pleadings relator alleges that he settled upon his home section

and filed the affidavit of the fact within the time required by the statute, and that he has since continuously occupied the land. In her answer, the corespondent, Tillman, denies in general terms the facts of settlement and continued occupancy. The answer of the respondent, Terrell, "adopts the plea of nonsettlement which is set forth in the original answer of the corespondent" and refers to copies of affidavits attached to his answer, the originals of which had been filed in the General Land Office, concerning relator's occupancy of the section, the contents of which need not be more particularly stated. Both of these answers were filed December 19, 1906.

In a supplemental petition, to which no reply has been made, relator pleads the statute of limitation passed in 1905 (Acts Reg. Sess. 29th Leg., p. 35) in bar of the attack upon his purchase, and avers that he filed in the Land Office affidavits in answer to those copies of which are attached to respondent's answer, and that the Commissioner had, on December 13, 1906, acted upon the contest and ascertained that he did settle on the land in compliance with law and had refused to cancel the sale of his home section. Upon this state of facts relator relies upon the provisions of the Act of the Legislature just referred to, in support of his contention that the attack upon his purchase comes too late, more than a year having elapsed between the award to him and the filing of the answer. The provisions relied on are as follows:

"Section 1. Be it enacted by the Legislature of the State of Texas: That hereafter all persons claiming the rights to purchase or lease any public free school lands, or any lands belonging to the State University, or either of the state asylums which have been heretofore or which may be hereafter sold or leased to any other person under any provision of the law authorizing the sale or lease of any of said lands, shall bring his suit therefor within one year after this Act goes into effect, or after the date of the award of such sale or lease, if such award is made after the taking effect of this Act, and not thereafter.

"Section 2. If no suit has been instituted by any person claiming the right to purchase or lease any of said land within the period of time limited in the first section of this Act, it shall be conclusive evidence that all the requirements of the law with reference to the sale or lease of such lands have been complied with; provided that nothing in this Act shall be construed to affect the State of Texas in any action or proceeding that may be brought by it in respect to any of said lands."

It will be noted that the express terms of the Act apply only to cases in which persons claim the right to purchase or lease land which has already been sold or leased to others; and, as the corespondent is not attempting to obtain the section which has been sold to relator, the language does not specifically include her. It may therefore be contended that the prescribed limitation is not applicable to the case. But this would be a very narrow view of the statute, the purpose of which evidently was to protect from the attacks of all, except the State, sales and leases which have stood and been recognized by the State for as long as a year. If only a question of the limitation of time applicable to such cases as this arose out of these provisions it should be held, we think, that the period prescribed by the statute applies. While

the corespondent does not attack the sale to relator because she claims the right to purchase the section which he bought, she does attack it because, upon her theory, the relator's right to purchase the other sections is dependent on the validity of his claim to his home section. She thus puts herself in the attitude of one attempting to show that he acquired no title to the home section and, therefore, no right to buy the other land. Her position could not possibly be better than that of one claiming the right to buy the land previously sold.

But we think the statute has another effect upon the question here involved. It defines the only class of claimants, besides the State, who are to be allowed to attack sales made and allowed to stand by the State. The right so recognized is only in those who assert a claim to purchase or lease lands sold or leased to others. Why should it be extended to those circumstanced as the corespondent? The relator's home tract has been sold to him by the State and the sale is permitted by the State to continue in force. It is not at all essential to any right the corespondent may have to hold the other land that she be allowed to disturb the relations which exist between the State and the relator in respect of the land sold to the latter. She has and can assert no right or interest in that, being interested merely in sustaining her claim to the other sections, the merits of which claim as against that of relator may be determined without questioning his relation to the State as a purchaser. We therefore hold that she can not in this way make the question as to the fact of relator's settlement, that being a question which can now arise only between him and the State. Has the Commissioner raised that question in any permissible way in behalf of the State? It will be noted that the saving clause of the statute in favor of the State says it shall not be affected "in any action or proceeding brought by it in respect to any of said lands." It is not at all clear that the Commissioner by his adoption of the answer of his corespondent meant to make an attack in behalf of the State upon relator's purchase, or to do more than to rest the defense upon the right set up by her, which, as we have seen, can not be maintained. But we shall not stop to consider this further, nor to inquire whether or not this method of attack could in any case be considered as such an "action or proceeding" brought by the State as is excepted from the provisions of the Act quoted. The Commissioner, according to the admitted facts, refuses to cancel the sale and allows it to stand. The State takes no action whatever to have it set aside or annulled. The consequence is that relator remains in the position of a purchaser subject to all of the obligations and liabilities attached to that position by the law. Is he not, while allowed so to continue, also entitled to its rights and privileges? It would seem plain that he is. One of those rights is to purchase other sections of land in addition to the one awarded to him. We can discern no right or power in either the Commissioner or his corespondent to deny this to him so long as he is held in the attitude of a purchaser. After refusing to cancel the sale to relator the Commissioner seeks now to make an issue affecting that sale, not for the purpose of annulling it, but for the sole purpose of denying to it one of its legal incidents. We hold that such an issue can not be brought for such a purpose into this case. It therefore becomes neces-

sary to determine whether the relator or the corespondent has acquired the better right to the land in controversy.

As we have before indicated, relator had applied in strict accordance with the statute when the land came on the market September 1, 1905, was the highest bidder, and was entitled to have the sale made to him, unless the corespondent had priority of right to purchase, as the assignee of an entire lease, under section 5 of the Act of 1905. (Laws 29th Leg., Reg. Sess., p. 163.) Several objections are urged by counsel for relator to her claim, only one of which need be discussed. The lease of which she claims to have been the assignee expired by its terms on the 1st day of August, 1905. On that day the instrument, under which she claims to have been the assignee, was executed to her, and she addressed a communication to the Commissioner notifying him of her purpose to buy eight designated sections of the leased lands, and requesting him to appraise them. The Commissioner, on August 4, replied that the designation included more agricultural sections than could be sold to one person; and, on the 10th of the same month, she forwarded another and proper designation, and the lands specified were afterwards appraised and the notices were given by the Commissioner. She then made her applications to buy which were on file in the Land Office September 1, and when relator's applications were opened as required.

The Commissioner, in holding that she had secured the prior right to purchase, acted upon an opinion from the Attorney-General's department, which, as well as the action taken, have received the consideration and respect due to the construction of a coordinate branch of the government. But we are constrained to hold that there was a misconstruction of the statute. That construction was of sections 5 and 11 of the Act of 1905, regulating sales and leases of school lands. (Laws Reg. Sess. 29th Leg., pp. 163, 166.) Section 5 provides that the assignee of an entire lease may purchase the specified quantity of the land included in his lease; that when desiring to purchase, he shall give written notice to the Commissioner, specifying the land which he desires to buy; that the Commissioner shall appraise the land and advise the applicant and the proper county clerk of the value placed thereon. It then further provides: "After such valuation and notice given and filed in the proper county clerk's office, the land shall be subject to sale to the persons aforesaid only and under the terms of this Act;" and further provides: "When a lease expires or is cancelled for any cause, no one shall have any preference to buy any land therein."

Section 11 is as follows: "In order that the Commissioner of the General Land Office may make the necessary preparation for the execution of the provisions of this Act, he is hereby prohibited from making any further sales or leases of any land prior to September 1, 1905, and all rights accruing under this Act prior to said date may be exercised thereafter the same as if no suspension of sales and leases had not occurred."

It is to be noted that the eleventh section prohibits nothing but the making of sales and leases prior to September 1, and that it creates no rights. It simply authorizes the exercise, after September 1, of "rights accruing under this Act." Rights could therefore only accrue under

other provisions of the Act, and whether or not any did accrue must be determined from such other provisions. That they might accrue by action taken or facts occurring under the Act is expressly recognized, notwithstanding the suspension of the power of the Commissioner to sell or lease. If they did accrue the eleventh section continued them in force and permitted their exercise after the time named. If none otherwise accrued, that provision originated none.

The idea on which the sale to the corespondent was made seems to be that section 5, by its own operation, gave her the right to a preference in the purchase of such of the lands as she might designate, and that the right to designate and purchase was continued in existence by section 11 until September 1. But this ignores the absolute provision that there shall be no preference after the expiration or cancellation of the lease. No preference could be secured after that took place. Section 11 did not extend the lease nor prevent it from expiring. The mere privilege which the holder of it had to secure a prior right to purchase was dependent on its continued existence and expired with it. The only right that could survive it would be one to demand the sale of particular land fixed by compliance with the law before it expired. The statute in no way prevented the taking of the steps necessary to fix this right to purchase before the lease terminated. Without taking those steps the assignee could have no right to demand a sale to her of the designated land if the power of the Commissioner had not been suspended. Before the right could become perfect, it must have been made the duty of the officer to sell but for the suspension of his power. Until the right had been acquired to demand such a sale, the suspensory provision could not affect the action of either party in any way and the clause of section 11 continuing in force rights accruing under the Act could not apply. It is only upon the assumption that the corespondent had done all those things which, in the absence of the suspensory provision, would have entitled her to a sale at the hands of the Commissioner, that a right could be held to have accrued to her which was carried over until a time when the sale could be consummated. If the lease in question had been cancelled for nonpayment of rent, instead of expiring by its terms, we suppose no one would contend that its former owner could thereafter have perfected a right to the preference; and yet the two cases are placed by the statute on the same footing. It is obvious that none of the necessary things were done in time. The first attempted designation did not reach the Commissioner before the lease expired and he could not have sold to her had his power not been suspended. It is therefore unnecessary that we determine at what precise point in such proceedings, taken while a lease remains in force, the right to purchase particular land becomes fixed.

We conclude that relator is entitled to the writ prayed for, to enforce the award of the land claimed by him.

*Writ granted.*