### KIRBY et al. v. CONN et al.

(Court of Civil Appeals of Texas. Galveston. March 15, 1913. Rehearing Denied April 10, 1913.)

1. PUBLIC LANDS (§ 173*)—SALE OF TIMBER—RIGHTS OF PURCHASER—SETTLING LAND—REPEAL OF STATUTE.

Under Acts 27th Leg. c. 125, a purchaser of timber with the right to purchase the land at any time before five years, but before the timber has been removed, a part of the consideration for which he paid the state, has a vested right when the state accepts his application to purchase the timber, and he complies with the terms of such purchase, which could not be impaired by a sale of any part of the land and the issuance of patents thereto from the state to another, during the time in which the purchaser had the statutory right to buy the land; and the fact that the act of 1907 relieved those holding such purchase rights from complying with the requirement of actual settlement did not change the date of his purchase of the timber

as the date upon which his right to purchase the land became vested.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

2. PUBLIC LANDS (§ 173*)—TEXAS—LIMITATION OF ACTIONS.

Acts 29th Leg. c. 29, which provides that all persons claiming the right to purchase public lands sold or leased to any person under any law shall bring suit therefor within one year after the act goes into effect or after the date of the award of such sale or lease, and that, if no suit is so brought, it shall be conclusive evidence, except as against the state, that all requirements of the law with reference to the sale or lease of such lands have been complied with, was intended to limit to one year the time in which an award or sale of land by the state might be attacked on the ground of irregularity by one claiming a right to purchase, and did not affect one whose right in the land sought to be recovered had vested prior to an award or sale by the state to the adverse claimant.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

3. PUBLIC LANDS (§ 173*) — PATENT — VALIDITY.

The state could not grant to a patentee land that it had previously contracted to sell to the purchaser of timber, and any patent impairing such purchaser's right to acquire title by compliance with the terms of his contract was void, and passed no title.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

4. TRIAL (§ 143*)—QUESTION FOR JURY—CONFLICTING EVIDENCE.

An issue of fact upon conflicting evidence is for the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 342, 343; Dec. Dig. § 143.*]

5. TRESPASS TO TRY TITLE (§ 52*)—RIGHTS OF ACTION—DEFENSES.

In trespass to try title, in which defendants disclaimed as to all of a quarter section except the part thereof included in a patent to their predecessor, and afterwards filed an agreement that they had cut and removed such of the timber as was cut from the property in controversy, such agreement was sufficient to authorize a verdict for plaintiff as to timber cut from the land in controversy.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 83, 84; Dec. Dig. § 52.*]

6. TRESPASS TO TRY TITLE (§ 52*)—RIGHTS OF ACTION AND DEFENSE—PARTIES LIABLE.

In trespass to try title against an individual claiming the land under deed from a patentee, and a lumber company which had cut and removed timber therefrom with his consent and permission, such consent and permission made the individual defendant a joint trespasser with the lumber company and liable to plaintiff in damages therefor.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 83, 84; Dec. Dig. § 52.*]

Appeal from District Court, Jasper County; W. B. Powell, Judge.

Trespass to try title by R. C. Conn against John H. Kirby, the Kirby Lumber Company, and J. R. Chapman, in which defendants Kirby and the Kirby Lumber Company impleaded A. V. Wright. Judgment for plaintiff against all defendants as to title and for damages, and judgment for defendants, Kirby, and Kirby Lumber Company against Wright, and John H. Kirby, Kirby Lumber Company, and J. R. Chapman appeal. Affirmed as to title and as to defendant Wright. Judgment against Chapman for damages reversed and rendered, and judgment against Kirby and the Kirby Lumber Company as to damages affirmed in part, and in part reversed and remanded.

H. C. Howell, of Jasper, Terry, Cavin & Mills, of Galveston, and Andrews, Ball & Streetman, of Houston, for appellants. Smith & Blackshear, of Jasper, and John B. Warren, of Houston, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title to a tract of 160 acres of land in Jasper county, and to recover as damages the value of the timber taken from the land by the defendants. The suit was brought by the appellee R. C. Conn originally against John H. Kirby and the Kirby Lumber Company, but by an amended petition filed on April 27, 1911, J. R. Chapman was also made a party defendant. The defendants Kirby and Kirby Lumber Company disclaimed as to all of the land except a portion thereof described in their answer by metes and bounds, as to which they pleaded not guilty. They also impleaded A. V. Wright on his warranty of title to the land described in their answer, and prayed judgment against him in event plaintiff recovered judgment against them. The defendant Chapman disclaimed except as to a portion of the land described in his answer, which was the same as that described in the answer of the original defendant, and as to which he pleaded not guilty. The defendant Wright answered by general demurrer and general denial of the allegations of plaintiff's petition. The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff against all of the defendants for all of the 160 acres of land, against John H. Kirby, the Kirby Lumber Company, and J. R. Chapman for the sum of $3,812.43, the value of the timber cut and taken from 98.97 acres of said land, and against the Kirby Lumber Company for the sum of $600, the value of timber cut from 19.98 acres of said land. Judgment was also rendered in favor of defendants Kirby and Chapman against A. V. Wright for the sum of $643.31 on his warranty of title. This appeal is prosecuted by the defendants John H. Kirby, Kirby Lumber Company, and J. R. Chapman.

The record discloses the following facts:

On July 28, 1889, A. V. Wright made application to the Commissioner of the General Land Office to purchase the south three-fourths of section No. 2, block No. 5, certificate No. 30/633, Texas & New Orleans Railway Company survey, Jasper county, Tex., as an actual settler, and on the same date executed his obligation to the state of Texas

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes.

for the sum of $468 for 480 acres of section No. 2 in Jasper county, surveyed for the school fund by virtue of certificate No. 30/633, issued to the Texas & New Orleans Railway Company.

On March 12, 1906, the said A. V. Wright filed in the General Land Office of Texas his proof of occupancy, as required by law, of the south three-fourths of section No. 2 in Jasper county, surveyed by virtue of certificate No. 30/633, issued to the Texas & New Orleans Railway Company, which proof of occupancy was made on March 9, 1906.

On May 17, 1906, the state of Texas patented to A. V. Wright 480 acres of land in Jasper county, describing the same as follows: "In Jasper county, known as S. ¾ Sec. No. 2, Blk. 5, T. & N. O. Ry. Co. Cert. No. 30/633, on the waters of the Neches River, about 25 miles S., 7 W. of Jasper, said land having been purchased and fully paid for in accordance with an act of 1895, and the amendment thereto by the act of May 19, 1897. Beginning at N. E. Cor. of Sec. No. 1, T. & N. O. Ry. Co.; thence S. with E. B. line of Sec. No. 1, T. & N. O. Ry. Co. 2346 vrs. to the S. E. Cor. of same in N. line of league Sur. in name of Wm. Allen; thence E. on N. line of said Allen league 959 vrs. to S. W. Cor. of Wm. King Sur.; thence N. on W. line of said King Sur. 1352 vrs. to his N. W. Cor.; thence E. on King's line 462½ vrs. to sta. fr. wh. a pine brs. S. 80 W. 21 vrs., a pine brs. N. 41 E. 20 vrs.; thence N. 994 vrs. sta. in N. line of this sec. and S. line of O. Harrall Sur.; thence W. on S. line of O. Harrall and John Myers Sur. 1421½ vrs. to the place of beginning." On March 9, 1906, A. V. Wright, for a consideration of $3,120, conveyed to John H. Kirby 480 acres of said section No. 2, T. & N. O. Railway Company Survey, by the following description: "Beginning at the N. W. Cor. of Sec. 2 T. & N. O. Ry. Co., from which a pine brs. S. 66 E. vrs.; thence E. 1,757 vrs. second Cor., a pine 10 in. in dia. brs. N. 80 E. 1 $^8/_{10}$ vrs. another 9 in. in dia. brs. N. 63 W. $^8/_{10}$ vrs.; thence S. 846 vrs. Cor. in the N. line of the Wm. King survey, from which a pine 15 in. in dia. brs. S. 80 W. 21 ½ vrs. another 26 in. in dia. brs. N. 41, E. 21 vrs.; thence W. 823 vrs. to the N. W. Cor. of said King; thence S. with the W. line of the King survey 1308 vrs. to King's S. W. Cor. a pine 2 ft. in dia. brs. N. 81, E. 4 $^2/_{10}$ vrs., another 8 in. in dia. brs. S. 65, W. 4 vrs.; thence W. with the N. line of the Wm. Allen league 937 vrs.; thence N. 2154 vrs. to the place of beginning, containing four hundred and eighty acres of land."

On August 30, 1909, the said A. V. Wright, by a deed of correction, reciting a misdescription in his former deed, conveyed to John H. Kirby said 480 acres of Texas & New Orleans Railway Company survey No. 2, in which deed of correction the 480 acres are described by the same field notes as are contained in the patent to A. V. Wright. By deed dated June 20, 1909, John H. Kirby conveyed to J. R. Chapman 480 acres of the said section No. 2, referring for description to the deed to the former from A. V. Wright.

On January 18, 1904, R. C. Conn made application to the Commissioner of the General Land Office to purchase the northwest one-fourth of section No. 2, Certificate No. 30/633, Texas & New Orleans Railway Company, 160 acres, at the price of $5 per acre. This application was indorsed and accepted by the Commissioner as an application to purchase the timber on the north one-fourth of said section, and on February 9, 1904, the Commissioner, for a cash consideration of $5 per acre paid by Conn, conveyed to him the timber on the north one-fourth of said section. This timber deed contains the following stipulations:

"First. The purchaser of said timber shall have five years from the date of the purchase hereof, which was the date the application was filed in the General Land Office of Texas, in which to remove the timber, and in case of failure to do so, such timber shall thereby be forfeited to the state without judicial ascertainment.

"Second. The purchaser of the timber, or his assignee, may at any time within five years from the date of the purchase of said timber, but before the timber has been removed, and not thereafter, apply to the Commissioner of the General Land Office for a classification of the land as agricultural or grazing, at the expense of the owner of such timber, and in that case the owner of the timber shall have the right to purchase the land at the price fixed thereon, upon the same terms and conditions as other lands of like classification are sold under chapter 125, Act of April 19, 1901."

As purchaser and owner of the timber appellee Conn made application for the purchase of the land under the provisions of the timber deed above set out, and on December 12, 1908, the Commissioner awarded him the land at a price of $2 per acre, one-fortieth of the purchase price to be paid in cash and the remainder in yearly payments of one-fortieth each, with interest at 5 per cent. per annum. Conn made the cash payment and has made the yearly payments and interest as they accrued.

The lines of said section No. 2 run north and south and east and west. The survey is in such shape that the north one-fourth is a parallelogram lying between the north line of the survey and a line parallel thereto, and extending from the east to the west line of the survey at such a distance south of the north line of the survey as to include between said lines one-fourth of the survey. From the shape of the survey and the course of its boundary lines the location of its north one-fourth is necessarily as before described, and the description of the land in the timber deed, and in the award to appellee, as

the north one-fourth of said section is a definite and certain description, and its location readily fixed and identified. The patent from the state to A. V. Wright, while it describes the land thereby granted as the south three-fourths of said section, includes within the field notes, giving the metes and bounds of the land granted, 98.97 acres of the north one-fourth of said survey, and the land included within the metes and bounds of said field notes is in fact the west three-fourths of said section.

It was agreed by an instrument in writing signed by the attorneys for plaintiff and the defendants on December 13, 1910, and introduced in evidence on the trial of the case, that the timber cut from the 98.97 acres of land in controversy was cut and removed from the land by the Kirby Lumber Company with the consent and permission of John H. Kirby and J. R. Chapman. At the time this agreement was made Chapman was not a party to the suit, and it does not appear from the record that he or anyone for him ratified said agreement, and there is no evidence that he was in any way connected with the cutting and removal of the timber by the Kirby Lumber Company, or that it was cut and removed with his knowledge and consent. The value of the timber cut and removed from the 98.97 acres was $3,812.43. Timber of the value of $600 had been cut and removed from 19.98 acres of that portion of the north one-fourth of the survey lying east of the east line of the tract described in the patent to A. V. Wright under which appellants claim, but the evidence is insufficient to show that this timber was cut by the defendant Kirby Lumber Company. This defendant had a tram road which ran from its lumber mill at Kirbyville, and traversed that portion of the section included in the Wright patent and extended along the north line of the section to its northeast corner. There was no other tram lumber road near this section, and the evidence shows that the Kirby Lumber Company had cut timber on each side of this road, but no witness testified that any of the timber cut from the 19.98 acres was cut by said company, and the manager of the company testified that no timber was cut by his company from the east end of the north one-fourth of the survey.

[1] Upon the issue of title the trial court gave the jury the following instruction: "You are told that the patent from the state of Texas gives to the said A. V. Wright and to his grantees, by the field notes therein contained, the said 98.97 acres of land, but that the application to purchase said land by said Wright being for the south three-fourths of said section and the purchase of the timber on the north three-fourths of said section by R. C. Conn in 1904, gave him the prior right to said 98.97 acres in conflict, and the apparent title to so much of said land described in said patent to A. V. Wright as is on the north one-fourth of said section is invalid as against R. C. Conn and you will, therefore, find in favor of R. C. Conn for the land sued for, and for such damages as you may determine he is entitled to under the instructions hereinafter given."

By the first assignment of error presented in their brief appellants complain of this charge on the ground that the 98.97 acres in controversy having been granted to Wright by the patent issued on May 17, 1906, and the award to plaintiff of the north one-fourth of the section on December 12, 1908, being subsequent to the issuance of said patent, the title to so much of the land awarded plaintiff "as is embraced within the field notes of said patent was, by said patent, vested in the said A. V. Wright and his assigns, and no prior or superior right to that conveyed by the patent having been shown to be in R. C. Conn, the plaintiff, it was error for the court to instruct the jury to find in plaintiff's favor for that portion of the land claimed by the plaintiff embraced within the field notes of said patent." This contention is based upon the theory that plaintiff acquired no right in the land in controversy by his purchase of the timber on the north one-fourth of the section on February 9, 1904. The act of April 19, 1901 (Acts 27th Leg. c. 125), under which plaintiff purchased the timber, gave him the right, as such purchaser, to purchase the land at any time within five years, but before the timber has been removed therefrom, by complying with the terms of said act. This right to purchase the land was part of the consideration for which he paid the state the sum of $5 per acre, and became a vested right when the state accepted his application to purchase the timber, and he complied with the terms of said purchase by paying the state the cash consideration at which the timber was sold. The timber deed made by the Commissioner expressly granted to appellee this right to purchase the land; but, independent of the recital in the deed, the right would have vested in him under the statute. That the right thus acquired could not be impaired by sale of any portion of the land and the issuance of patent thereto by the state to another during the time which appellee was given by the statute in which to purchase the land is, we think, clear. The question was directly decided by this court in the case of Hooks v. Kirby, 124 S. W. 156, and a writ of error prosecuted from that decision was refused by the Supreme Court. Appellants further contend that appellee's right to purchase the land under the act of 1901, under which his timber purchase was made, was conditioned on his being an actual settler thereon, and since this condition of actual settlement was not removed until the passage of the act of 1907, and appellee having purchased the land on December 12, 1908, with-

out the condition of actual settlement, it follows that the right of purchase claimed and exercised by appellee was not acquired by or vested in him until the passage of the act of 1907, and was therefore subsequent to the issuance of the patent under which appellants claim. There is no merit in this contention. The fact that the state in 1907 relieved appellee and others holding similar rights of purchase from complying with one of the conditions on which their right of purchase could be exercised did not change the date upon which his right to purchase the land became vested. Appellee's purchase of land was by virtue of the right vested in him as a purchaser of the timber on February 9, 1904. He acquired no right to purchase under the act of 1907. All that that act did for him was to relieve him of the requirement of actual settlement as a condition of the exercise of his previously acquired and vested right to purchase the land.

[2] Act 29th Leg. p. 35, approved March 16, 1905, provides as follows:

"Section 1. That hereafter all persons claiming the right to purchase or lease any public free school lands, or any lands belonging to the State University, or either of the state asylums which have been heretofore or which may be hereafter sold or leased to any person under any provision of the law authorizing the sale or lease of any of said lands, shall bring his suit therefor within one year after this act goes into effect, or after the date of the award of such sale or lease, if such award is made after the taking effect of this act, and not thereafter.

"Sec. 2. If no suit has been instituted by any person claiming the right to purchase or lease any of said lands within the period of time limited in the first section of this act, it shall be conclusive evidence that all the requirements of the law with reference to the sale or lease of such lands have been complied with; provided that nothing in this act shall be construed to affect the state of Texas in any action or proceeding that may be brought by it in respect to any of said lands."

Appellants contend that appellee, having failed to bring his suit for the land in controversy within one year after the issuance of the patent to Wright, has, under the provisions of this statute, lost his right to the land, and the title of Wright and his assigns thereto has become unassailable except as against a suit by the state. We do not think this statute applies to a case of this kind. The evident purpose and intent of this statute is to limit to one year the time in which an award or sale of land by the state can be attacked on the ground of irregularity by one who claims only a right to purchase, and does not affect one whose right in the land sought to be recovered had vested, prior to the award or sale by the state, to the adverse claimant. If appellants' construction of this statute is correct, any sale by the state of land which it had previously contracted to sell another would destroy the rights of the grantee in such contract, even, as to a purchaser with notice of the contract, unless he brought suit thereon within one year after such sale by the state. We do not think the statute should be given this construction. The appellee in this case is not attacking for irregularity an award of sale of the land by the state to Wright. Appellee's vested right in the land in controversy has never been denied or questioned by the state, but, on the contrary was expressly recognized by awarding him the land upon his application to purchase under the terms of his timber deed contract.

[3] The fact is that Wright did not make application for the purchase of the land in controversy, and the award to him of the south three-fourths of the section did not include any of the land previously contracted to be sold to appellee. The land actually granted by the patent to Wright does include this land, but to that extent the patent is void, and passed no title to Wright. The state could not grant to Wright land that it had previously contracted to sell to appellee, and any attempt to thus impair appellee's right to acquire title by compliance with the term of his contract was void. We do not think the opinions of the Supreme Court in the cases of Murphy v. Terrell, 100 Tex. 397, 100 S. W. 130, Wyerts v. Terrell, 100 Tex. 410, 100 S. W. 133, and Erp v. Tillman (Sup.) 131 S. W. 1057, cited and relied on by appellants, are in conflict with these conclusions. We think appellee showed the superior title to the land and the trial court properly instructed the jury to find in his favor upon this issue.

The second and third assignments of error present in a different form the same question presented by the first assignment, and for the reasons before stated cannot be sustained.

[4-6] The fourth assignment complains of a paragraph of the court's charge in which the jury are instructed that "the evidence in the case, as well as admissions of counsel for defendants, show that defendants cut and removed the timber that was cut off the north one-fourth of said section as described by R. C. Conn in his petition." In so far as this charge applied to the defendant J. R. Chapman, or to the timber taken from that portion of the north one-fourth of the section not in conflict with the land described in the patent to Wright, it was not authorized by the evidence, nor by the agreement of counsel referred to in the charge. The agreement mentioned in the charge is as follows: "District Court of Jasper County, December Term, A. D. 1910. R. C. Conn v. J. H. Kirby et al. It is agreed by and between the parties hereto * * * that the Kirby Lumber Company with the consent

and permission of John H. Kirby and J. R. Chapman cut and removed such of the timber as was cut and removed from the property in controversy. Witness our hands this 13th day of December, A. D. 1910." At the time this agreement was filed J. R. Chapman had not been made a party to the suit, and was therefore not a party to this agreement, which was signed by the attorneys of the then defendants, John H. Kirby and the Kirby Lumber Company, and is only binding upon those defendants. Before this agreement was executed, the defendants John H. Kirby and the Kirby Lumber Company had filed their answer in which each disclaimed title to all of the north one-fourth of the section, except that portion thereof included in the Wright patent. Such being the status of the claims of the respective parties, the only land in controversy at the time the agreement was filed was the 98.97 acres of the north one-fourth of the section included in the Wright patent, and that was the only part of the land to which the agreement applied. As before stated,. in our findings of fact, there is no evidence that the defendant Chapman cut or removed any timber from any part of plaintiff's land, or that he consented to or permitted such removal by any one. We doubt if there is any evidence sufficient to establish the fact that the defendant Kirby Lumber Company cut or removed any timber from that portion of plaintiff's land not included in the Wright patent, but, if the evidence was sufficient to raise such issue, it was not uncontradicted, and that issue should not have been taken from the jury. We think, however, that the agreement was sufficient to authorize the court to instruct the jury to return a verdict in favor of plaintiff against the defendant John H. Kirby as well as the Kirby Lumber Company for the value of the timber cut and removed from the land in controversy by the Kirby Lumber Company. At the time the timber was cut the defendant John H. Kirby was claiming the land under his ·deed from Wright, and if, as stated in the agreement, the timber was cut and removed from the land by the Kirby Lumber Company with his consent and permission, we think he should be held liable to plaintiff for its value. If he had sold the timber to the Lumber Company, he would certainly be liable to plaintiff for its value, notwithstanding he in good faith believed he owned the land. The injury sustained by plaintiff by reason of the taking of the timber by the Kirby Lumber Company was just as certainly the ordinary and natural result of the permission given the company by Kirby to cut and remove the timber as it would have been of the sale of the timber by him. His consent and permission to cut and remove the timber made him a joint trespasser with the Lumber Company and liable to plaintiff for the damages caused by. such trespass.

What we have said disposes of all the .material questions presented in appellant's brief. We have considered all of the assignments of error and. except as above indicated all are overruled. From the conclusions before expressed, it follows that the judgment in favor of plaintiff against all of the defendants for the land in controversy, and the judgment in his favor against John H. Kirby and the Kirby Lumber Company for the value of the timber taken from the 98.97 acres of land in controversy, and also the judgment in favor of the defendants John H. Kirby and J. R. Chapman against the defendant Wright on his warranty of title, should be affirmed, the judgment in favor of plaintiff against the defendant J. R. Chapman for the value of the timber taken from the land should be reversed, and judgment here rendered in favor of said Chapman that plaintiff take nothing against him on his claim for damages, and the judgment in favor of plaintiff against the Kirby Lumber Company for the value of timber taken from that portion of plaintiff's land not included in the patent to Wright should be reversed and as to that issue the cause remanded for a new trial. It is ordered that judgment of this court be entered in accordance with these conclusions.

Affirmed in part. Reversed and rendered in part. Reversed and remanded in part.