## STATE v. SNEED et al.

### No. 11641.

Court of Civil Appeals of Texas. Galveston.

July 13, 1944.

Rehearing Denied Aug. 3, 1944.

Grover Sellers, Atty. Gen., and Fagan Dickson and Gaynor Kendall, Asst. Attys. Gen., for appellant.

Tarlton Morrow and Vinson, Elkins, Weems & Francis, all of Houston, for appellee Gilbert Sneed and others.

Myron A. Smith and Smith & Smith, all of Fort Worth, for appellee Southland Royalty Co.

R. E. Seagler and Ralph B. Lee, both of Houston (Rex G. Baker, of Houston, of counsel), for appellee Humble Oil & Refining Co.

Turner, Rodgers & Winn, Carlton R. Winn, and George S. Terry, all of Dallas (Donald Campbell and L. A. Thompson, both of Tulsa, Okl., of counsel), for appellee Stanolind Oil & Gas Co.

Baker, Botts, Andrews & Wharton, of Houston, for appellee Pan American Production Co.

MONTEITH, Chief Justice.

This suit was brought by the State of Texas in statutory form of trespass to try title for the recovery of 15.1 acres of unsurveyed school land located in what is known as the Hastings Oil Field in Brazoria County, Texas, from a number of defendants, including the original patentees from the State and lessees and royalty owners holding under them, and the purchasers of oil produced from said land.

All defendants answered by pleas of not guilty and general denials and by special pleas that the State's suit was barred by the one-year statute of limitation, Article 5329, Section 4, Vernon's Texas Civil Statutes. Certain of the appellees as subsequent purchasers pled that they were innocent purchasers of interests in the land in controversy for value without notice of the State's claim thereto.

In a trial before the court without a jury the appellees' contentions were sustained and judgment was rendered denying the State any recovery save and except the 1/16 royalty reserved to the State in the original patent.

The State's suit is exclusively an action in trespass to try title. No equitable grounds for cancellation of the patent to the land in controversy are pled and, although some of the appellees are subsequent purchasers, there are no allegations or proof in the record that they were in any wise actually acquainted with any invalidity in the transaction or in respect to the relation of the land to a producing well at the time the sale was made or the patent issued.

The material facts in the record are undisputed. The 15.1 acres of land involved in the suit was a part of a vacancy which lay between the west line of A. C. H. & B. Survey No. 2 and the Brazoria County line. The land, with other property was conveyed to H. G. and Gilbert Sneed by J. W. Surface on February 1, 1929, as a part of said A. C. H. & B. Survey No. 2, for a consideration of $25 per acre. It was considered by all interested parties to be part of said survey. It was entirely enclosed by a fence at the time of its purchase and has been continuously enclosed by fences and used and occupied by the Sneeds and their cotenants since that time.

On July 19, 1935, the Sneeds filed their application for a survey to purchase the 15.1 acres of land involved herein in accordance with Sections 5 and 6 of the Act of 1931, Chapter 271, of the General Laws of the Regular Session of the 42d Legislature, commonly known as House Bill 358, now Article 5421c, §§ 5, 6, Vernon's Annotated Texas Civil Statutes. On July 19, 1935, the county surveyor of Brazoria county issued and served his citations as provided for in Section 6 of said Act. On August 3, 1935, said county surveyor of Brazoria County made a survey of said land and on August 12, 1935, he filed the field notes so made in his records. They were subsequently incorporated in the patent issued by the State to the Sneeds. On August 14, 1935, the Sneeds filed their application to purchase said land in the General Land Office. The application was accompanied by all papers necessary under the Act. On November 22, 1935, the 15.1 acres of land in controversy was awarded to the Sneeds at a price of $25 per acre. The full consideration was paid by them to the State, and on November 29, 1935, patent was issued by the State of Texas to the Sneeds. The patent recites that the sale was made pursuant to Section 5 of the 1931 Act. It is regular on its face and shows no infirmity antedating its issuance.

Certain appellees, including Stanolind Oil & Gas Company, have purchased interests in said land for valuable considerations. Immediately after their purchase of a lease on said land from the Sneeds the Stanolind began the development thereof and shortly thereafter began the production of oil therefrom. It has continuously since that time paid to the Commissioner of the General Land Office 1/16 of the gross value of oil produced therefrom as a royalty.

The Act of 1931, now said Article 5421c, was approved May 29, 1931, and became effective Aug. 21, 1931. The material provisions of said Act are:

"Section 1. All lands heretofore set apart to the public free school funds under the Constitution and laws of Texas, and all of the unappropriated and unsold public domain remaining in this State of whatever character * * * are subject to control and sale under the provisions of this Act.

　　*　　　*　　　*　　　*　　　*

"Section 3. * * * Unsurveyed land is defined to be all areas not included in surveys on file in the General Land Office or surveys delineated on maps thereof.

"Section 4. All lands shall be sold without condition of settlement and with a reservation of one-sixteenth (1/16) of all minerals, as a free Royalty to the State, which two conditions shall be expressed in the application to purchase and in the notice of award, the minimum price to be fixed by the Commissioner and in no case to be less than one dollar ($1) an acre. * * *

"Section 5. * * * In all cases where a tract of school land has been occupied by mistake as a part of another tract, such

occupant shall have a preference right for a period of six months after discovery of the mistake, or after passage of this Act, to purchase the land at the same price contracted to be paid for the land actually conveyed to him.

"Section 6. Anyone desiring to buy any of the unsurveyed land included in this Act not situated within five miles of a producing oil and gas well shall file with the county surveyor of the county in which the land may be situated, an application for survey describing the land in such manner as will enable the surveyor to identify it and pay the surveyor a fee of one dollar ($1) for filing and recording said application and also deposit with him such sum of money as will pay for citing the claimant or claimants of the land, if any, and the adjoining owners as the tax rolls may disclose the name of such claimants or adjoining owners. The surveyor using the forms prescribed by the General Land Office, shall immediately send by registered mail or hand to each claimant or adjoining owner a citation containing a description of the land sought to be surveyed and fix the date for survey. The survey shall be made and the field notes filed in the Land Office within one hundred and twenty (120) days from the filing of the application with the surveyor. If the area is found by the Commissioner to be unsurveyed and subject to sale, he shall value the land and give notice of the valuation to the applicant, who may purchase the land on the same terms and conditions as prescribed by the law and the regulations for the sale of surveyed land. * * *

"Section 8. * * * All unsold public free school land, both surveyed and unsurveyed, shall be subject to lease by the Commissioner to any person, firm or corporation for the production of minerals * * *.

"Any person who discovers an unsurveyed area of school land which has not been listed on the records of the Land Office as school land, and is not in actual conflict on the ground with land previously sold or appropriated and which appears on the official Land Office map as unsurveyed land, may apply in writing to the county surveyor and have same surveyed, and after the field notes thereof have been returned to the Land Office and approved and filed with the Land Commissioner, shall have a preference right for sixty (60) days thereafter to purchase a mineral lease thereon at the minimum price fixed by the Land Commissioner, in addition to the other consideration provided herein."

It was stipulated by the parties that the land in controversy was, at the time said patent was issued and at all times since, within five miles of a well producing oil in commercial quantities. There is no evidence in the record, however, as to whether or not an investigation of this fact was made by the Commissioner of the General Land Office, or whether the fact was known to the applicants or to any of the purchasers under them.

The Commissioner of the General Land Office testified that shortly after the 1931 Act became effective one M. T. Cole had filed an application in the General Land Office for survey and field notes to purchase a tract of 26 acres of land in Gregg County, Texas, under the provisions of Section 5 of said 1931 Act, and that, acting in accordance with the authority granted him under Article 5405, Vernon's Annotated Civil Statutes, which provides that, "Should it appear to the Commissioner from the records of his office or from information on oath given him that there is some illegality in the claim, he shall, if he deems it necessary, refer the matter to the Attorney General, whose written decision shall be sufficient authority for him to issue or withhold the patent", he had written to the Assistant Attorney General of the State of Texas and had, in answer to said communication, been advised by him, through a written decision, that M. T. Cole had a right to buy said land as a good faith occupant under Section 5 of the 1931 Act and that the limitations contained therein against sale of lands located within five miles of a producing oil well did not apply to restrict Cole's right to buy the land under the preference right which he asserted under said Section 5 of the Act.

Later suit was filed against M. T. Cole for the recovery of the 26 acres of land referred to in the correspondence between the Commissioner of the General Land Office and the Assistant Attorney General. Caples v. Cole, 129 Tex. 370, 102 S.W.2d 173. This suit will be hereinafter referred to.

The Commissioner of the General Land Office testified that he had applied this decision of the Assistant Attorney General to all subsequent similar applications made to him as Commissioner of the General

Land Office for preference rights under Section 5 of the 1931 Act, including the Sneed tract involved herein.

It is the State's contention that the patent to the 15.1 acres of land involved herein, and the proceedings antecedent to it, were void and ineffectual to convey any title out of the State, for the reason that said land was located within five miles of a well producing oil in commercial quantities and that the title to said land had not passed out of the State of Texas, and that the trial court erred in failing to so adjudge the ownership thereof.

Appellees contend: (1) That, under Section 5 of the 1931 Act, the patent to the Sneeds is a valid conveyance from the State regardless of the proximity of said land to an oil well; (2) that, since said patent remained in full force and effect for more than seven years before this suit was filed on September 29, 1943, the State was barred from recovering the land by virtue of the one-year statute of limitation, Article 5329, Section 4, Vernon's Annotated Civil Statutes, which provides that sales made without condition of settlement cannot be attacked by the State after one year from the date of the issuance of the patent; and (3) that those appellees herein who were subsequent purchasers of leasehold interests, royalty interests, and the oil produced from said lease, for value, were innocent purchasers thereof and were entitled to recover as such.

The question as to whether lands located within five miles of a producing oil well were reserved from sale under the 1931 Act and whether the reservation was applicable to lands as to which an applicant asserted a preference right to purchase under Section 5 of the Act was considered and passed on by the Supreme Court in the case of Caples v. Cole, 129 Tex. 370, 102 S.W.2d 173, 177. In that case, the Supreme Court, speaking through Justice Sharp, said: "As stated above, it was agreed 'that said land was within five miles of a producing oil well.' If this fact is undisputed, this leaves no authority for the sale of this land, and there is no provision of this law upon which the validity of the patent may rest. This act clearly forbids the sale of such land. The mere fact that the patent was issued does not make it valid. The sale was null and void." (Citing authorities).

■ On motion for rehearing in the Caples case the Court held that the determination of the point as to the proximity of the land sought to be patented to a producing oil well was not requisite to the decision of that particular case and formally reserved the point (129 Tex. 370, 104 S.W.2d 3). Later, however, the Austin Court of Civil Appeals handed down an opinion in the case of Humble Oil & Refining Co. v. State, Tex.Civ.App., 104 S.W.2d 174, which followed the original opinion of the Supreme Court in the Caples case, and the Supreme Court refused application for writ of error. The cases of Spring v. Meco Production Co., Tex.Civ.App., 134 S.W.2d 828, writ of error dismissed, and State v. Gulf Oil Corporation, Tex.Civ.App., 166 S.W.2d 197, also follow the rule laid down in the original opinion of the Caples case. Under these authorities, we think that it is the established law of this State that voidable patents to unsurveyed school lands located within five miles of a well producing oil in commercial quantities are subject to cancellation when properly attacked during the limitation period.

Appellees contend, however, that the State is prohibited from recovering herein because of the one-year statute of limitation, Article 5329, Section 4, Vernon's Annotated Civil Statutes, which provides that sales made without condition of settlement cannot be attacked by the State after one year from the date of issue.

The patent under consideration was issued on November 29, 1935. This suit was filed on September 28, 1943.

In its original opinion in the Caples case the Supreme Court stated that if the property were within five miles of an oil field "The sale was null and void." This language, however, is immediately followed, as part of the same paragraph, by the statement, "Therefore the sale could have been questioned by suit filed within one year after the date of sale by anyone against whom it was sought to be used." In construing the court's opinion we must assume from this context that the court used the term "void" in the sense that the sale would be void if attacked during the limitation period. This construction is borne out by the fact that the court in its opinion on motion for rehearing makes the following statement: "As to any sale of

public land *neither authorized by law or made under color of law* (emphasis ours), the one year statute of limitation above stated would not apply. Kirby v. Conn, 109 Tex. 540, 212 S.W. 469; Id., Tex.Civ.App., 156 S.W. 232; Rainer v. Durrill, Tex.Civ. App., 156 S.W. 589." The question then arises as to whether the sale by the State of the land in controversy was authorized by statute, or whether it was made under color of law.

Section 1 of the 1931 Act expressly empowers the Land Commissioner of the State of Texas to make sales of vacant lands "under the provisions of this Act." It provides that the application for the purchase of any land that is vacant must be first submitted to the Commissioner of the General Land Office.

Section 2 of said Act provides that surveyed lands cannot be sold if located "within five miles of a well producing oil." The 15.1 acres in question in this suit was "unsurveyed" land.

Section 4 of said Act provides that vacant lands shall be sold "without condition of settlement." Said 15.1 acres of land were so sold.

Under said Act the Land Commissioner was empowered to make a fact finding of the proximity of the vacant land to a producing oil well. The record does not show that an investigation of this fact was not made by the Commissioner, or whether the fact that the land was within five miles of a producing oil well was known to the applicants or their vendees at the time of their purchase of such interest in said land.

■ It has been uniformly held in this state, beginning with the early case of Decourt v. Sproul, 66 Tex. 368, 1 S.W. 337, that a patent is not void by reason of irregularity which does not appear upon its face, and that, in the absence of fraud, the judgment of the Commissioner of the General Land Office upon the qualifications of a patentee is conclusive. Such a patent is held to be not void but voidable.

This rule was followed in the case of Slaughter v. Qualls, 139 Tex. 340, 162 S.W. 2d 671, 673, 674, wherein the Supreme Court, quoting with approval from Smith v. Thornhill, Tex.Com.App., 25 S.W.2d 597, says: "That which is void is without vitality or legal effect. That which is voidable operates to accomplish the thing sought to be accomplished, until the fatal

vice in the transaction has been judicially ascertained and declared."

"Color of title" has been defined by our courts to mean a good faith attempt to comply with the existing law. In the case of Hunt v. Atkinson, Tex.Com.App., 12 S.W.2d 142, 145, it is said: "Before an attempted organization can be said to be under 'color of law,' there must have been a good-faith attempt to organize in the method prescribed by existing law, or at at least a colorable compliance with that law."

In the instant case the Commissioner of the General Land Office was charged with the duty of administering the unsurveyed school lands. The undisputed evidence shows that he attempted in good faith to comply with the law in making the sale of the land in controversy to the Sneeds.

Section 4 of said Article 5329 has been construed and followed in the following cases, including the case of Caples v. Cole, supra; Herndon v. Robison, 114 Tex. 446, 270 S.W. 159; Skaggs v. Grisham-Hunter Corp., Tex.Civ.App., 53 S.W.2d 687; Lovett v. Simmons, Tex.Civ.App., 19 S.W. 2d 116; Callahan v. Giles, 137 Tex. 571, 155 S.W.2d 793; Erp v. Tillman, 103 Tex. 574, 131 S.W. 1057.

In the case of Callahan v. Giles, 137 Tex. 571, 155 S.W.2d 793, 796, Justice Sharp, who wrote the opinion for the Supreme Court in the case of Caples v. Cole, sustained the 1921 Act and expressly incorporated in it the previously given construction by the Supreme Court to the 1905 Act, holding that: "In 1921 * * * the Legislature amended the Act referred to by Judge Williams, so as to make it apply to the State as well as to private citizens; so that, under the provisions of the Act as now in force, neither the State nor 'any person' may question a sale, made without condition of settlement, after one year from the date of such sale."

■ Under the above authorities, we think the State is barred from recovering the land in controversy under the provisions of said Article 5329, Section 4.

Appellees, Stanolind Oil & Gas Company, and the subsequent purchasers of leasehold and royalty interests under the original patentees, contend that, since they purchased their interests in said land for value without notice of any vice in the patent from the State of Texas to the

Sneeds, they must be protected as innocent purchasers thereof for value.

The burden rested upon the State in the trial court to prove that the subsequent purchasers of interests in the land in controversy had notice of inherent vices in said patent at the time of their purchase. The record shows the State did not discharge this burden. While it was stipulated by the parties that the land in controversy was within five miles of a producing oil well at the time the patents were issued, there is no showing in the record that appellees had any notice of the proximity of an oil well at the time they paid value for their interests in said land.

The question as to whether a subsequent purchaser can be an innocent purchaser by appearance of title created by the certificate of occupancy issued by the General Land Office was passed on by the Supreme Court in the case of State v. Hughes, 97 Tex. 520, 80 S.W. 524. In that case an award had been made to one Mullen based on his affidavit of occupancy. Certificate of occupancy had issued by the Commissioner of the General Land Office. Hughes had purchased from Mullen upon the faith of the certificate of occupancy. The Attorney General brought suit against Hughes to recover the section of land, alleging that Mullen had not occupied the section, but that Hughes was a bona fide purchaser. The Austin Court of Civil Appeals, 79 S.W. 608, 610, speaking through Judge Key, in affirming the judgment of the trial court, said: "* * * the most that can be said is that the Commissioner of the Land Office, in the exercise of a discretion vested in him by law, and without fraud on the part of any one, has honestly committed an error, and decided a matter within the scope of his authority differently from the way he should have done. We are of the opinion that the state should not be permitted to overthrow and cancel such right and title as the defendant in this case has, upon a mere showing that the Commissioner of the Land Office committed an error in deciding a question of fact, when the law vested in him authority to pass upon the question."

The Supreme Court, speaking through Judge Williams, in affirming the judgment of the Court of Civil Appeals, said: "In this case it appears that defendant in error purchased the land after proof and certificate of three years' occupancy, relying upon such certificate, and paying full value for the land, without notice of the fact of nonoccupancy alleged as a ground for canceling the sale. In refusing the application, we think it proper to say that we hold that the defense of innocent purchaser, under the certificate, is good against the attack of the state upon the sale on the ground of nonoccupancy."

It follows from above conclusions that the judgment of the trial court must be in all things affirmed.

Affirmed.