ALEXANDER et al. v. STANOLIND OIL
& GAS CO. et al.

No. 11731.

Court of Civil Appeals of Texas. Galveston.

Jan. 16, 1946.

Rehearing Denied Feb. 7, 1946.

Grover Sellers, Atty. Gen. of Texas, and Jack Rowland and R. J. Long, Asst. Attys. Gen., for appellant State of Texas.

W. T. Williams, of Austin, and Albert J. DeLange, Frank A. Stamper, and Robert P. Beman, Jr., all of Houston, for appellant E. C. Alexander.

Carlton R. Winn and Turner, Rodgers & Winn, all of Dallas (Donald Campbell and L. A. Thompson, both of Tulsa, Okl., of counsel), for appellee Stanolind Oil & Gas Co.

Carlos B. Masterson and Masterson & Pope, all of Angleton, for appellees Hiram Moore and others.

MONTEITH, Chief Justice.

This action was brought by E. C. Alexander in regular form of trespass to try title to recover from a number of defendants a tract of land located in Bazoria County, Texas, alleged to be a vacancy and subject to lease as unsurveyed school land. The State of Texas, acting through its attorney general, intervened in the suit, alleging that the location of the boundaries of the tract of land sought to be recovered had been fully determined and adjudicated by this court under the doctrine of stare decisis in the case of State of Texas v. Franco-American Securities, Ltd., et al., 172 S.W.2d 731, wherein the State of Texas and all parties to this suit who claim against the State were defendants and parties in their several capacities. The State alleged that E. C. Alexander has applied for a lease of the land.

All defendants answered by pleas of not guilty and general denial, and by special pleas that appellants' suit was barred by the one year statute of limitation, Article 5329, Section 4, Vernon's Ann.Civil Statutes.

In a trial before the court judgment was rendered that plaintiff and intervenor take nothing by their suit.

The trial court prepared and caused to be filed his findings of fact and conclusions of law, in which he found that the land in controversy had been duly patented to Hennell Stevens prior to the filing of this suit and that it was not a vacancy.

Appellants excepted to these findings on the ground that the location of the land had been established as a matter of law prior to the filing of the suit, in that the corrected patent of the Hennell Stevens Survey had been judicially cancelled in the judgment of the district court of Travis County in the Franco-American case and that that portion of said judgment had been duly affirmed by this court on appeal.

The following map shows what we deem to be the true location of the alleged vacancy and its relation to the surrounding surveys and the corrected and monumented Brazoria-Galveston County line, all of which were fixed in the opinion of this court in the Franco-American case, above referred to.

It was contended by appellants that the land in controversy was part of a vacancy which was alleged to lie between the east line of ACH&B Survey No. 2 and the Brazoria County line, and to be bounded on the north by the Moore and Rasmussen Survey, and on the south by the Hennell Stevens Survey. It was described in appellants' pleadings as:

"Beginning at a 1-1/4 inch iron rod at the southeast corner of the Moore and Rasmussen Survey, a point on the monumented Brazoria-Galveston County line;

"Thence S. 88 deg. 33' W. with the south line of said Moore and Rasmussen Survey 241.85 varas to a 1-1/4 inch iron rod at its southwest corner in the east line of Section No. 2, A.C.H.&B.;

"Thence S. 8 deg. 33' W. 584.24 varas with the cast line of said A.C.H.&B. No. 2 to a 1/2 inch iron pipe set at its southeast corner;

"Thence N. 88 deg. 33' E. 235.02 varas along an extension eastward of the south line of said A.C.H.&B. No. 2 to 1/2 inch iron pipe set in the County line;

"Thence N. 9 deg. 13' E. along said County line, at 165.48 varas past Mile Post No. 5, in all 585.48 varas."

Appellees contend that the land in controversy is part of the patented Hennell Stevens Survey under both an original and a corrected patent.

On December 3, 1888, Hennell Stevens filed an application with the County Surveyor of Brazoria County for the survey of a tract of land in Brazoria County, pursuant to the provisions of the "Scrap Act" of 1887, c. 80, which provided for the sale of all vacant and unappropriated land of not more than 640 acres in certain counties of the state, described as being: "A tract near Galveston County Line, lying east of Sections 37 and 40, H.T.&B.R.R.; south of Section 2, A.C.H.&B.; and north of the Magee Survey, and west of M. Henry Survey and said Magee Survey."

This application was filed in the General Land Office on April 19, 1889. On the same date the County Surveyor of Brazoria County filed in the General Land Office the following field notes of the land applied for in the application:

"Field Notes of survey of 266-3/5 acres of land made for Hennell Stevens, it being the quantity of land applied for in his application dated December 3, 1888, made in accordance with an act known as Chapter 80 of the Laws of the 20th Legislature.

"Beginning at the southwest corner of Section 2, A.C.H.&B. Abstract No. 462, on the east line of Section 37, H.T.&B.R.R.;

"Thence east 1796 varas along the lower line of said Section 2 to its southeast corner;

"Thence S. 10 deg. W. 867 varas to the N. E. corner of the R. A. Magee 320-acre tract;

"Thence N. 80 deg. W. 1344 varas to its N. W. corner;

"Thence S. 10 deg. W. 1344 varas to its S. W. corner;

"Thence N. 80 deg. W. 88 varas to a stake for corner on the east line of Section 40, H.T.&B.R.R.;

"Thence N. 1928 varas along the east line of Sections 40 and 37 to the place of beginning, containing 266 3/5 acres of land."

On August 20, 1889, pursuant to this application, the State of Texas issued the original patent to the Hennell Stevens Survey under the field notes filed in the General Land Office by the County Surveyor of Brazoria County on April 19, 1889.

The field notes of the original patent of the Hennell Stevens Survey obviously created conflicts on the ground with the established surveys after the Brazoria-Galveston County line was corrected and monumented in 1896, and H. Kempner, the then owner of the survey, applied to the Commissioner of the General Land Office under Articles No. 5409 and 5410, Revised Civil Statutes, for the issuance of a corrected patent of the Hennell Stevens Survey. This application was granted and a corrected patent was issued to H. Kempner, assignee of Hennell Stevens, on July 11, 1935, under the following field notes:

"Beginning at the Southwest corner of the R. A. Magee Survey.

"Thence N. 8 deg. 33' E. with the west line of the R. A. Magee survey, at 1125.00 varas the center of the old channel of Chigee Bayou (course S. 9 deg. 10' E.) and in all 1344 varas to the Northwest corner of said R. A. Magee Survey.

"Thence S. 81 deg. 27' E. 1370.81 varas with the North line of said R. A. Magee Survey to an intersection with the present monumented Galveston-Brazoria County line;

"Thence N. 9 deg. 13' E. with said county line, at 447.00 varas mile post No. 5 of

said county line and in all 867.00 varas to a point in same for the Northeast corner of this survey.

"Thence S. 88 deg. 33' W. 242.08 varas to the east boundary line of A.C.H.&B. Survey No. 2;

"Thence S. 8 deg. 33' W. 584.24 varas, with the East line of said A.C.H.&B. No. 2, to its Southeast corner;

"Thence S. 88 deg. 33' W. 1726.63 varas with the South line of said A.C.H.&B. No. 2, to its Southwest corner; on the East line of H.T.&B.R.R.Co. Survey No. 37;

"Thence S. 0 deg. 54' E. 1302.53 varas with the East line of said H.T.&B.R.R.Co. Survey No. 37 to a point on same for corner;

"Thence S. 81 deg. 27' E. 344.02 varas to the place of beginning."

The locations of the senior surveys surrounding the Hennell Stevens survey as described in the corrected patent were definitely located by this court in the Franco-American case, supra. In the opinion in that case the John R. Williams Survey was found to have been titled on July 29, 1924. To it the adjoining and surrounding senior surveys have been tied and are called to run with relation thereto, including the surveys surrounding and called for in the field notes of the alleged vacancy and the field notes of the original and corrected patents of the Hennell Stevens Survey, including the H.T.&B.R.R.Co. Surveys Nos. 37 and 40, the A.C.H.&B. Surveys Nos. 1 and 2, the I.G.N. Survey No. 22, the R. A. Magee, the Mary Sloan, and William Henry Surveys.

This court held in its opinion in the Franco-American case that the Land Office map of 1883, which was copied in the opinion in that case, incorrectly depicted the location of the Brazoria-Galveston County line and that it caused a discrepancy in the location of the east line of the R. A. Magee and the west lines of the Mary Sloan and William Henry surveys. It was established in the Franco case that the 1883 Land Office map scales a distance of only 4950 varas from the west corner of the Perry and Austin League Survey to the point on its northwest line, where the map incorrectly depicts the beginning point of the county line, whereas the correct distance to this point on the ground is 5539 varas. This court found in the Franco-American case that the county line was incorrectly shown on the 1883 map as parallel to and 589 varas west of the true line as it was monumented upon the ground in 1896.

The trial court found, from what we deem to be a logical conclusion from the evidence adduced, that Hennell Stevens and his surveyor relied upon the incorrect location of this county line and the consequent incorrect location of the lines of the Magee, the Mary Sloan and the William Henry Surveys in preparing and submitting the field notes in the original application of the Hennell Stevens Survey.

Appellants contend that the corrected patent of the Hennell Stevens Survey was judicially cancelled by the judgment of the district court in the Franco-American case and that that portion of said judgment was affirmed by this court on appeal. This contention cannot, we think, be sustained.

In the Franco-American case the State of Texas and W. T. Williams, Sr., assignee of J. G. Puterbaugh, sought recovery of what was therein designated as Tract No. 6, which was alleged to have been located between the east line of H.T.&B.R.R.Co. Survey No. 37 and the west line of the Hennell Stevens Survey, and to have been bounded on the south by I.&G.N.Survey No. 22 and on the north by a tract designated in that suit as Tract No. 1.

The trial court in that case rendered judgment that the State of Texas recover said Tract No. 6, subject to the William lease, and that the purported corrected patent to the Hennell Stevens Survey issued to H. Kempner and his assignees, on the 11th day of July, 1935, be cancelled and held for naught.

All parties to that action who were interested in said Tract No. 6 duly perfected their appeal within time to fix its jurisdiction in the Court of Civil Appeals.

On appeal this court in its judgment held that there was error in that part of the judgment of the trial court which awarded a recovery to the State of Texas and its lessee, with respect to said Tract No. 6, and rendered judgment that the judgment of the trial court with respect to said Tract No. 6 be reversed and that the State and its lessees take nothing as to all parties to that proceeding with respect to said Tract No. 6.

In its opinion in the Franco case [172 S. W.2d 745], this court held that " * * * such evidence as a matter of law establishes that no vacancy exists between the west

line of the Hennell Stevens and the east line of H.T.&B. No. 37. And the judgment of the trial court holding that Tract 6 exists as a vacancy must be here reversed and rendered." Application for writ of error was refused by the Supreme Court for want of merit.

Texas Rules of Civil Procedure, rule 434, provides that: "When the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered."

It is said in 26 Texas Jurisprudence, Section 374, page 56, that: "A final judgment of an appellate court * * * rendered by it after reviewing the lower court's judgment, has the same conclusive effect upon the parties as a final and unappealed from adjudication of a trial tribune. Such a judgment is regarded as a final determination of every question involved in the appeal, whether it was noticed in the decision or not."

In order for the State of Texas and its lessees to have recovered Tract No. 6 in the Franco-American case, it was necessary for them to have shown that said Tract was unpatented land, and to have established the fact of the invalidity of the corrected patent of the Hennell Stevens Survey.

While the location of Tract No. 6 which was involved in the Franco-American case and the alleged vacancy involved in this suit were not identical when applied to the ground, the State, in attempting to recover said Tract 6 in the Franco-American case, a part of which was admittedly covered by the field notes of the corrected patent of the Hennell Stevens Survey, made a direct attack upon said corrected patent in an endeavor to cancel it and thereby allow that portion of said Tract 6 which was in conflict with it to be unpatented land. The issue of the validity of the corrected patent was tendered by the State and its lessee in its pleadings and the trial court, in its judgment, held the corrected patent to be invalid.

The Court of Civil Appeals, in its opinion in which it reversed the judgment of the trial court and held that Tract 6 was not a vacancy, directly upheld the existence of the corrected patent of the Hennell Stevens Survey in holding that no vacancy existed "between the west line of the Hennell Stevens and the east line of H.T.&B. No. 37".

Further, it is the established law in this state that the "legal effect of a final judgment is to determine finally a cause of action set up in the pleadings and pending for decision in the cause when that judgment is pronounced, unless, indeed, the court exclude it from the scope of its action." Hermann v. Allen, 103 Tex. 382, 128 S.W. 115, 116.

The provision in the judgment of the Court of Civil Appeals "that the said plaintiff, State of Texas, and cross-defendant, W. T. Williams, Sr., assignee of J. G. Puterbaugh, take nothing", effectively invalidates, in so far as the State of Texas, a party to that suit, and its lessees, are concerned, that portion of the trial court's judgment which attempted to cancel the corrected patent.

Appellees further contend that the corrected patent of the Hennell Stevens Survey cannot now be attacked by the State or any other person, because of the provisions of Article 5329(4), which provides that "No sale heretofore made or hereinafter made without condition of settlement shall be questioned by the State, nor any person, after one year from the date of such sale." General Laws 1921, pp. 118–120.

The corrected patent in the Hennell Stevens Survey was issued July 11, 1935. It is valid on its face. It expressly recited that the land was sold in accordance with Chapter 80 of the Acts of the 20th Legislature. This is known as the "Scrap Act" of March 29, 1897. This suit was filed on November 10, 1944, more than nine years after the issuance of the corrected patent. It is undisputed in the record and admitted by the parties that the corrected patent, when applied to the ground, includes the land sued for.

The precise question contended for by appellees in this case was decided by this court in the recent case of State v. Sneed, 181 S.W.2d 983, 987, in a suit by the State of Texas attacking the Moore & Rasmussen and Sneed patents located north of the Hennell Stevens Survey involved in this case. In its opinion the court said:

"Section 4 of said Article 5329 has been construed and followed in the following cases, including the case of Caples v. Cole, [infra]; Herndon v. Robison, 114 Tex. 446, 270 S.W. 159; Skaggs v. Grisham-Hunter Corp., Tex.Civ.App., 53 S.W.2d 687; Lovett v. Simmons, Tex.Civ.App., 19 S.W.2d 116; Callahan v. Giles, 137 Tex.

571, 155 S.W.2d 793; Erp v. Tillman, 103 Tex. 574, [575], 131 S.W. 1057.

"In the case of Callahan v. Giles, 137 Tex. 571, 155 S.W.2d 793, 796, Justice Sharp, who wrote the opinion for the Supreme Court in the case of Caples v. Cole, sustained the 1921 Act and expressly incorporated in it the previously given construction by the Supreme Court to the 1905 Act, holding that: 'In 1921 * * * the Legislature amended the Act referred to by Judge Williams, so as to make it apply to the State as well as to private citizens; so that, under the provisions of the Act as now in force, neither the State nor "any person" may question a sale, made without condition of settlement, after one year from the date of such sale.'

"Under the above authorities, we think the State is barred from recovering the land in controversy under the provisions of said Article 5329, Section 4."

Application for writ of error was refused by the Supreme Court in this case. State v. Sneed, 183 S.W.2d 566. In its opinion refusing application for writ of error, the Court, speaking through Judge Alexander, said that the application was refused because the court was of the opinion that the State's suit to recover the land was barred by the one-year statute limitation. Revised Statutes 5329, subd. 4; Caples v. Cole, 129 Tex. 370, 102 S.W.2d 173, 104 S.W.2d 3.

It follows from the above conclusions that the judgment of the trial court must be in all things affirmed.

Affirmed.