# W. J. Caples v. M. T. Cole.

No. 7198.   Decided February 10, 1937.
Rehearings overruled April 14, 1937;  May 12, 1937.
(102 S. W., 2d Series, 173;  104 S. W., 2d Series, 3.)

*John T. Gano,* of Houston, for plaintiff in error.

An act passed by the Legislature (Article 5421c, the 1931 Mineral Act) and approved by the Governor did not become effective until ninety days after the adjournment of the session of that Legislature, as said bill was shown to have passed the House by a viva voce vote, the Senate with amendments by a vote of 31 yeas and no nays, and the Senate amendments were concurred in by the House in a vote of 103 yeas and no nays, even though it contained the emergency clause. For a bill containing the emergency clause to take effect immediately it must have received a two-thirds vote in both Houses upon the passage of the original bill in each, and not upon a vote of either or any of the amendments added by the other. Pohle v. Robertson, 102 Texas 274, 115 S. W. 1166; Wilson v. Young County Hdw. & Furn. Co., 262 S. W. 873; McKinney v. Grassmeyer, 51 Texas 376.

At all the time involved herein, the tract of land here in suit, being an unsurveyed area, and also being within five miles of a producing oil well, was not subject to being patented, either under Section 5 of the 1931 Mineral Act, which covers and includes only surveyed land, or under Section 6 of said Act which includes only lands not situated within five miles of a producing oil well, and the Cole application to purchase and the patent issued to him thereunder were void on their respective faces and he acquired and holds no right of title thereto. Weatherly v. Jackson, 123 Texas 213, 71 S. W. (2d) 259; Ashburn v. Vireca Corp., 68 S. W. (2d) 343; Barrow v. Gridley, 59 S. W. 602.

*Bramlette & Levy,* of Longview, for defendant in error.

The Mineral Act of 1931 was effective as an emergency measure and, therefore, Cole's patent was not void as without

authority of law, as the amendment is a fundamental part of the original bill and it should be stamped with approval in its final form by both Houses by the required vote. Missouri, K. & T. Ry. Co. v. Thomason, 280 S. W. 325; 59 C. J. 560, Sec. 74.

Caples having filed his suit more than a year after the date of the patent is precluded from attacking the patent. Murphy v. Terrell, 100 Texas 397, 100 S. W. 100; Barnes v. Patrick, 105 Texas 146, 146 S. W. 154.

*H. Grady Chandler* and *Russell Rentfro*, Assistants Attorney General, of Austin, and *Rex G. Baker, R. E. Seagler* and *Lee M. Sharrar*, all of Houston, filed briefs as amici curiae.

MR. JUSTICE SHARP delivered the opinion of the Court.

This suit involves 39.5 acres of public free school land situated in Gregg County. M. T. Cole filed this suit in the district court in trespass to try title against W. J. Caples for this land. To this action Caples answered, and by cross action claimed title to the land. Cole answered the cross action by general demurrer, general denial, and a plea of not guilty, and took a nonsuit as to his cause of action for the land. The parties went to trial before the court without a jury upon the cross action of Caples, and at the close of the evidence the court entered judgment against Caples on his cross action. The Court of Civil Appeals at Texarkana affirmed the judgment of the trial court. 98 S. W. (2d) 447.

Both parties assert their interest in this land by virtue of the Act of 1931, Chapter 271 of the General Laws of the Regular Session of the 42d Legislature, commonly known as House Bill 358, now Article 5421c Vernon's Annotated Texas Civil Statutes. The facts are brief. Cole on June 17, 1931, made application to the Land Office to purchase this land, and a patent was issued to him on August 19, 1931. Caples on September 10, 1931, filed with the county surveyor of Gregg County an application for a survey of the land for the purpose of purchase, or, in the alternative, for leasing it for oil and gas purposes. This application was thereafter filed in the Land Office on June 7, 1932, and was rejected by the Land Commissioner on September 21, 1933, on the ground that the land had already been patented to Cole. It was agreed that in June, 1931, when the land in controversy became involved in these matters, "said land was within five miles of a producing oil well."

The first question raised is: When did this act take effect? Cole contends that, since the act was finally passed with an

emergency clause, it went into effect immediately after its passage. Caples, on the other hand, contends that, since the original bill did not pass the House on its third reading by a two-thirds yea and nay vote, it failed to meet the constitutional requirement, and did not take effect until ninety days after the adjournment of the Legislature.

This act originated in the House, and passed that body by a viva voce vote. Thereafter it was sent to the Senate, where it was amended, and passed as amended by a vote of 31 yeas and no nays. The bill was then returned to the House, where the amendments adopted by the Senate were concurred in by the House by a vote of 103 yeas and no nays. The regular session of the Legislature adjourned on May 23, 1931, and the act was approved by the Governor on May 29, 1931. The act contained an emergency clause.

Article 3, Section 39, of the Constitution provides:

"No law passed by the legislature, except the general appropriation act, shall take effect or go into force until ninety days after the adjournment of the session at which it was enacted, unless in case of an emergency, which emergency must be expressed in a preamble or in the body of the act, the legislature shall, by a vote of two-thirds of all the members elected to each house otherwise direct; said vote to be taken by yeas and nays, and entered upon the journals."

This precise question has never been before this Court for decision. A conflict has arisen by reason of an opinion rendered by the Court of Civil Appeals at Fort Worth, in the case of Wilson v. Young County Hardware & Furniture Co., 262 S. W. 873, and an opinion rendered by the Court of Criminal Appeals in the case of Ex parte May, 118 Texas Crim. Rep. 165, 40 S. W. (2d) 811. In the Wilson case the Court of Civil Appeals held, in effect, that the passage of a bill required to be taken by ayes and nays is the vote by which each house adopts it after final reading, and not that vote by which the house in which it originated may subsequently concur in amendments made by the other house. This case did not reach the Supreme Court, so far as our records show, and the holding therein has never been approved or disapproved by this Court. In the May case the Court of Criminal Appeals held, in substance, that a substitute bill, different from the original bill, and not passed by a record vote showing concurrence of two-thirds of the Legislature, was ineffective as an emergency measure; and that the power to make an emergency measure must be exercised when the Legislature becomes aware of the terms contained in the

bill as finally agreed upon and passed. The Court of Civil Appeals followed the rule announced by the Court of Criminal Appeals in the May case, and held that the vote upon the amendments, and not the vote upon the original bill, would control. The authorities bearing upon this question are reviewed in the two opinions above cited, and we shall not review them here.

It is highly important that the spirit of comity should at all times exist between the Court of Criminal Appeals and the Supreme Court; and, if possible, a conflict of opinions on the matters over which they have coordinate jurisdiction should be avoided. Uniformity of opinion by the two courts upon all questions is important and greatly desired. An opinion by the Court of Criminal Appeals on any subject that comes within its jurisdiction always carries great weight with this Court.

1 Furthermore, we agree with the holding of the Court of Criminal Appeals in the May case, and hold that this bill became effective immediately after its passage. It is clear that the object of the provision of the Constitution above quoted is that if a bill is to take effect immediately on its passage, it must contain an emergency clause and such bill must be passed by a vote of two-thirds of all the members elected to each house, and such vote to be taken by yeas and nays and entered upon the journals. We think the rule prescribed by the Constitution also applies to amendments and reports of conference committees. If this were not true, it is quite obvious how the rule could be abused. A harmless bill might be passed in its inception by the requisite vote, and then be radically amended and such amendments be put into immediate effect without the vote required by the Constitution. If such were the rule, the vote on the original bill would control as to whether it became a law immediately after its final passage, and not the final vote subsequently taken on the amendments placed thereon by the other branch of the Legislature, and the plain provision of the Constitution requiring that it be adopted by a vote of two-thirds of all the members of each house, in order to declare an emergency, could be evaded.

The main question presented here is: Did the Act of 1931 authorize the issuance of a patent to Cole, as was done, for land situated within five miles of a producing oil or gas well? The Act of 1931 contains many sections, and in the opinion of Wintermann v. McDonald, this day announced, 129 Texas 275, 102 S. W. (2d) 167, certain sections of the Act are discussed in detail, and we refer to that opinion for such discussion. However, we shall refer to certain provisions of this Act in this

opinion, in order to reveal the intention of the Legislature with reference to the question presented here. Section 2 of House Bill 358 describes how surveyed public free school land may be sold, but specifically contains the following provision: "Provided that all such land within five miles of a well producing oil or gas in commercial quantities shall be subject to lease only, and the surface rights shall not be sold." Section 6 of the Act also provides in what manner unsurveyed school land may be sold, but particularly excepts from sale "land situated within five miles of a producing oil or gas well."

Section 5 provides how any party who has held and claimed certain lands in good faith for a period of ten years may obtain a patent therefor. It further provides "that in all cases where a tract of school land has been occupied by mistake as a part of another tract, such occupant shall have a preference right for a period of six months after the discovery of the mistake, or after the passage of this Act, to purchase the land at the same price paid or contracted to be paid for the land actually conveyed to him." Section 6 provides that "anyone desiring to buy any of the unsurveyed land included in this Act not situated within five miles of a producing oil or gas well" may take certain steps to purchase said land. Section 8 provides for the lease of both surveyed and unsurveyed school land, and fixes the terms of the lease thereof.

2    Senate Concurrent Resolution No. 4 was adopted at the First Called Session of the 42d Legislature for the purpose of changing some of the provisions of this Act. Its purpose was to permit those who sought to acquire school land under Section 5 to be freed of the limitation that lands situated within five miles of a producing oil or gas well should not be sold. The resolution reads as follows:

" * * * that it was the intention of the Legislature, and is now the intention of the Legislature that public school land occupied by mistake as provided in said Section 5 be sold to the occupant at the same price which such occupant paid or contracted to pay for his adjoining tract and of which he in good faith thought such public school land a part, and it is further declared that it was not and is not intended that said privilege of purchasing such land shall be abridged, limited, subject to or burdened with any other provision of said Act or pre-existing law, except as to the reservations of said Section 4."

It will be noted that the original act was passed at the Regular Session of the 42d Legislature, and Senate Concurrent

Resolution No. 4 was passed at the First Called Session of the 42d Legislature. It is plain that the resolution not only undertakes to interpret or construe what the original act contained, but also to read into said law words and intentions not expressed in the original act. Statutes can not be amended in that manner. Resolutions play their part in our legislative history, and are often resorted to for the purpose of expressing the will of the Legislature, but statutes can not be amended by resolutions. Statutes may be interpreted or construed by the same or succeeding Legislatures in the manner prescribed by the Constitution; and while such procedure is not controlling, it is persuasive with the courts in construing statutes. The Constitution has clearly prescribed the method to be pursued in the enactment of laws and their amendments. This resolution does not meet the requirements prescribed by the Constitution, and therefore can not be considered as amending the 1931 Act. We must interpret the original act as written. Article 3, Sections 29, 30, and 36 of the Constitution of Texas.

3   The Legislature prescribes the method by which a purchaser may acquire lands belonging to the State. All sales of public lands must be authorized by law. Thus we see that the Legislature has used substantially the same language in prohibiting the sale of surveyed and unsurveyed school lands situated within five miles of a producing oil or gas well. Therefore, for the purposes of this opinion, it is immaterial whether the land involved here is classed as surveyed or unsurveyed school land.

4   It is well known that the Land Commissioner is frequently called upon to exercise his judgment and discretion in performing the duties placed upon him by law, and the courts are slow to disturb him or his action in the exercise of his judgment and discretion. DePoyster v. Baker, 89 Texas 156, 34 S. W. 106. If the facts raised a reasonable dispute as to whether the land is "within five miles of a well producing oil or gas in commercial quantities," and the issue of fact was presented for determination, the finding by the Land Commissioner upon such issue would be conclusive, unless such finding is clearly illegal, unreasonable, or arbitrary.

5   As stated above, it was agreed "that said land was within five miles of a producing oil well." If this fact is undisputed, this leaves no authority for the sale of this land, and there is no provision of this law upon which the validity of the patent may rest. This Act clearly forbids the sale of such land. The mere fact that the patent was issued does not make it valid.

The sale was null and void. Wyerts v. Terrell, 100 Texas 409, 100 S. W. 133; Pohle v. Robertson, 102 Texas 274, 115 S. W. 1166; Weaver v. Robison, 114 Texas 272, 268 S. W. 133; Rainer v. Durrill, 156 S. W. 589 (writ refused). Therefore the sale could have been questioned by suit filed within one year after the date of sale by anyone against whom it was sought to be used.

The record shows that a patent was issued to Cole on August 19, 1931, and that within one year thereafter Caples filed his application to purchase, or, in the alternative, to lease the land for oil and gas purposes. This gave him an interest in the land in controversy under the terms of this law, and he or the Attorney General had the authority to question the validity of the patent issued to Cole in a court of competent jurisdiction, if suit be filed within the time required by law. In this case no suit was filed in the district court questioning the validity of this patent within a year after the issuance thereof. The Legislature has said that "no sale made without condition of settlement shall be questioned by the State or any person after one year from the date of such sale." (Article 5329, Section 4, Vernon's Annotated Texas Civil Statutes.) The Legislature meant by the adoption of this language that if an award or sale was to be questioned within one year, it had to be done by the institution of proper legal proceedings in a court of competent jurisdiction. The rule announced in the foregoing provision of the statute has been sustained in many decisions. Herndon v. Robison, 114 Texas 446, 270 S. W. 159; Erp v. Robison, 106 Texas 143, 155 S. W. 180, 157 S. W. 1160; Lovett v. Simmons, (Com. App.) 29 S. W. (2d) 1021; Skaggs et al. v. Grisham-Hunter Corporation et al., 53 S. W. (2d) 687 (writ refused). Since the sale of this land was not questioned within one year "after the date of such sale," it has become final, and Cole has acquired, by virtue of such sale, the land in controversy.

For the reasons herein stated, the judgment of the Court of Civil Appeals is affirmed.

Opinion delivered February 10, 1937.

ON MOTION FOR REHEARING.

6 In our original opinion we held that that part of Section 4 of Article 5329, Vernon's Annotated Texas Civil Statutes, which reads, "no sale made without condition of settlement shall be questioned by the State or any person after one year from the date of such sale," controls this case.

Cole acquired this land from the State at a price of $12.50 per acre, and it was treated for the purposes of the sale as surveyed school land. The sale was made without condition of settlement. Section 2 of H. B. No. 358 provides how all surveyed school land may be sold under said Act, but also provides "that all such land within five miles of a well producing oil or gas in commercial quantities shall be subject to lease only, and the surface rights shall not be sold." The agreed statement "that said land was within five miles of a producing oil well" is all the testimony upon this question contained in the record. Therefore, it is not shown indisputably that the Land Commissioner was not called upon to determine an issue of fact and to exercise his judgment and discretion in making the sale. Under such state of facts that provision of Section 4, supra, would apply.

7 We do hold, however, that all sales of public school land must be authorized by law. As to any sale of public school land neither authorized by law nor made under color of law, the one year statute of limitation above cited would not apply. Kirby v. Conn, 109 Texas 540, 212 S. W. 469, Id., 156 S. W. 232 (Tex. Civ. App.); Rainer v. Durrill, 156 S. W. 589 (writ refused).

Part of Section 5 of H. B. No. 358 reads as follows:

"Any headright survey, homestead donation, pre-emption survey, scrip survey or other survey heretofore awarded or sold, which survey has been held and claimed in good faith by any party for a period of ten years prior to the date of application for patent and which surveys can not be patented under existing laws, may be patented on payment of one dollar ($1) an acre to the Land Commissioner."

The facts of this case do not bring before us for construction the foregoing provisions of Section 5, and, therefore, we are not called upon to hold that land described therein can not be acquired by purchase if it is situated within five miles of a producing oil or gas well. Upon that question we express no opinion herein.

With the foregoing statements, plaintiff in error's motion for rehearing is overruled.

Opinion delivered April 14, 1937.

Second motion for rehearing overruled May 12, 1937.