

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

July 28, 1955

Honorable John H. Winters          Opinion No. S-163
Executive Director
Department of Public Welfare     Re:  Effective date for allo-
Austin, Texas                          cation of welfare funds
                                       under House Bill 413,
                                       54th Legislature, and re-
Dear Mr. Winters:                      lated questions.

        You have requested an opinion on the amounts which
should be allocated to the Blind Assistance Fund, the
Children's Assistance Fund, and the Old Age Assistance Fund
for the month of September, 1955, and the date or dates on
which the allocations are to be made.

        House Bill 413, Acts of the 54th Legislature, 1955,
amended Subsections (1), (2), and (4) of Section 2, Article
XX of Chapter 184, Acts of the 47th Legislature (Section 2 of
Article 7083a, Vernon's Civil Statutes) so as to provide for
annual increases totaling $7,000,000 in the allocations to
these funds for the fiscal year beginning September 1, 1955,
and for each fiscal year thereafter. The law provides that
the allocations are to be made on the basis of monthly pay-
ments payable on the first day of each calendar month.

        Section 2 of House Bill 413 provides that the Act is
to become operative on September 1, 1955. The bill carried an
emergency clause providing for immediate effectiveness, but
final action on passage of the bill in each branch of the
Legislature was by a viva voce vote. Article III, Section 39
of the Texas Constitution provides:

        "No law passed by the Legislature, except
    the general appropriation act, shall take effect
    or go into force until ninety days after the ad-
    journment of the session at which it was enacted,
    unless in case of an emergency, which emergency
    must be expressed in a preamble or in the body
    of the act, the Legislature shall, by a vote of
    two-thirds of all the members elected to each
    House, otherwise direct; said vote to be taken by
    yeas and nays, and entered upon the journals."

In order to put a bill into effect earlier than 90 days after adjournment, it is necessary that a record vote of two-thirds of its members be taken on final action by each House. Since the bill was not passed by the necessary record vote, it will not be in force until September 6, 1955. Caples v. Cole, 129 Tex. 370, 102 S.W.2d 173 (1937); Att'y Gen. Ops. 0-5471 (1943), S-90 (1953). Until the expiration of the constitutional period, it has no effect as law. Missouri, K. & T. Ry. Co. of Texas v. State, 100 Tex. 420, 100 S.W. 766 (1907); Popham v. Patterson, 121 Tex. 615, 51 S.W.2d 680 (1932); 39 Tex. Jur., Statutes, Sec. 25.

House Bill 140 of the 54th Legislature, the General Appropriations Act for the 1955-1957 biennium, appropriates the additional $7,000,000 for each of the fiscal years of the biennium. This Act will become effective on September 1, 1955, and will make available for expenditure all moneys which are allocated to the welfare funds. However, House Bill 140 does not constitute, or purport to constitute, an authorization for transfer of moneys to the welfare funds; it merely appropriates the moneys which are transferred to the funds under the general law. Before the money is available for expenditure under the appropriation, it must be transferred into the respective funds from which the appropriations are made, and Article 7083a is the only authorization for such a transfer.

Until House Bill 413 becomes effective, Article 7083a as it existed prior to the amendment continues to be in force. "Where the legislature passes an act to amend a statute then existing, the latter remains in full force during the interval between passage of the amendatory act and the time when it becomes effective." 82 C.J.S., Statutes, Sec. 399. It follows that on the first day of September, 1955, the monthly sums specified in Article 7083a prior to the 1955 amendment should be allocated to the respective funds.

The next question to consider is whether House Bill 413 will authorize a further allocation for the month of September on its effective date. As a general rule, statutes operate prospectively, but they may operate retrospectively when it is apparent that such was the intention, unless some constitutional impediment prohibits it. Cox v. Robison, 105 Tex. 426, 150 S.W. 1149 (1912); American Surety Co. of New York v. Axtell Co., 120 Tex. 166, 36 S.W.2d 715 (1931). It is apparent, both from the provision that the bill was to become operative on September 1, 1955, and from the provision that the bill was to apply to allocations for the fiscal year beginning on that date, that the Legislature intended that House Bill 413 should control the allocations for this month. In 39 Texas

Jurisprudence, Statutes, Sec. 27, the meaning of the constitutional prohibition against enactment of a retroactive law is summarized in this language:

" . . . But this provision is construed merely as forbidding the enactment of any law that will prejudicially affect existing, vested rights,--whether arising out of contract or tort--or the operation of a law in such manner as to have that effect. The inhibition is not ordinarily extended to a procedural or remedial statute, such as a curative act, or, in fact, to any act which does not disturb or impair vested rights."

An application of House Bill 413 so as to make it retroactive to the first day of September would not impair rights of taxpayers who provide the revenues out of which the public assistance programs are financed. It would not create any new liabilities on their part, or increase the amount which the State is authorized to pay out. Without giving House Bill 413 a retroactive effect, it still would allocate the full $42,000,000 for payment of grants during the 1955-1956 fiscal year. The only difference between retroactivity and nonretroactivity is in time of payment of the allocations.

The only other conceivable impairment would be in respect to rights which might have arisen in reliance upon the allocations which had been made on September 1 to the special funds which participate in the Clearance Fund. There could not possibly be an impairment unless a reallocation in accordance with House Bill 413 would reduce the amounts previously allocated to the special funds from all available sources. Taking into consideration the anticipated condition of the Clearance Fund and the General Revenue Fund, the probability of a reduction is so remote that we do not deem it necessary to discuss the question of whether an impairment would result in those circumstances.

Based on the assumption that an adjustment would not reduce the previous allocations, upon the effective date of House Bill 413 the Comptroller will be authorized to adjust the various funds in accordance with the allocations that would have been made on September 1 if House Bill 413 had been in effect on that date. If the amount in the Clearance Fund on that date was sufficient to pay all allocations to the six funds which share in the Clearance Fund (including the increased allocations to the three welfare funds), any remaining balance would have been paid into the General Revenue Fund. If the amount in the Clearance Fund was insufficient to pay all

allocations except the full allocation to the Foundation
School Fund, the difference would have been paid out of the
General Revenue Fund. In either of these circumstances,
the adjustment may be made by transferring the necessary
amounts from the General Revenue Fund to the respective wel-
fare funds, since the General Revenue Fund is the one which
will have benefited by the fact that the increased alloca-
tions were not made on the first day of the month. In view
of the unlikelihood that the amount in the Clearance Fund on
September 1 would not be sufficient to pay the full alloca-
tions to the other five special funds in the order of their
priority, we shall not detail the method of adjustment for
other circumstances.

## SUMMARY

House Bill 413, Chapter 392, Acts of the
54th Legislature, which provides for annual in-
creases totaling $7,000,000 in the Blind
Assistance Fund, the Children's Assistance Fund,
and the Old Age Assistance Fund, will become
effective on September 6, 1955. On September 1,
1955, allocations should be made to these funds
on the basis of an annual total of $35,000,000,
but on September 6 each of these funds will be-
come entitled to receive for the month of
September one-twelfth of its share of the
$7,000,000 annual increase. The adjustment in
allocations may be made by transferring the
additional amounts from the General Revenue Fund.

APPROVED:

J. A. Amis, Jr.
Reviewer

John Reeves
Reviewer

Robert S. Trotti
First Assistant

John Ben Shepperd
Attorney General

MKW:bl

Yours very truly,

JOHN BEN SHEPPERD
Attorney General

By *Mary K. Wall*
Mary K. Wall
Assistant