OF TEXAS



June 30, 1958

Mr. Raymond W. Vowell
Acting Executive Director
Board for Texas State Hospitals
and Special Schools
Austin, Texas

Dear Mr. Vowell:

Opinion No. WW-468

Re: Authority of and proce-
dure for the leasing of
lands of the Alabama-
Coushatta Indian Reser-
vation in Polk County,
Texas for oil and gas
development.

You have requested the opinion of the Attorney Gen-
eral regarding the authority of the Board for Texas State Hos-
pitals and Special Schools, in co-operation with the Alabama-
Coushatta Indian Tribe, to lease the reservation lands for
oil and gas purposes. In answering this and related questions
it is necessary to review certain legislative and congressional
enactments. For a more exhaustive historical summation, see
our Opinion No. WW-43 dated March 5, 1957.

By an Act dated February 3, 1854 (4 Gammel 68) the
State of Texas provided funds and authority for the purchase
of 1280 acres of land for the Alabama Indians to be used by
that tribe as a home. The Commissioners appointed under this
Act did arrange for the purchase and conveyance to the tribe
of Alabama Indians of several tracts of land, and the deeds
from the several grantors specifically make reference to the
Act of 1854. Thus to accurately determine the nature of the
estate conveyed to the Indians, we must construe the deed and
the Act together.

Section 3 of the 1854 Act provides in part as follows:

". . . and that said Indians shall not alien,
lease, rent, let, give or otherwise dispose of said
land or any part thereof to any person whatsoever.
And should the State of Texas hereafter provide a
home for said tribe of Indians, and settle them
thereon, then the said twelve hundred and eighty
acres of land, with its improvements, shall become
the property of the State."

From the quoted section of the Act, it is immediately
apparent that the Indians received less than a fee simple estate
in the lands. There are specific restrictions upon the Indians

which bar any conveyance or lease by them of their estate or any part thereof, and further their possession and enjoyment of the lands are dependent upon the Legislature as shown in the quoted language.

It is well settled in Texas that an oil and gas lease is a conveyance of real property and operates to transfer the oil and gas in place. 31A Tex.Jur. 188, Section 117 and authorities cited therein. By the restriction in Section 3 of the 1854 Act against any transfer by the Indians of their lands or any part thereof, an oil and gas lease by the Indians would be prohibited. The reversionary estate is in the State of Texas and should the Legislature see fit to provde a lawful procedure for leasing these lands, it could do so.

In 1928 the Indian reservation was enlarged when an adjacent tract of 3071 acres was purchased by the United States "in trust for the Alabama and Coushatta Indians of Texas". In 1954, by Public Law 627 (68 Stat. 768, 25 U.S.C.A., Secs. 721 et seq.) Congress terminated federal supervision over the tribe and authorized the Secretary of the Interior to convey the 3071 acres to the State of Texas "in trust for the benefit of the Indians of the Alabama and Coushatta tribes of Texas, subject to such conditions regarding management and use as the State of Texas may prescribe and the disposition of such lands shall be subject to approval of a majority of the adult members of the Alabama and Coushatta tribes of Texas".

In anticipation of the adoption of Public Law 627, the Legislature adopted Senate Concurrent Resolution No. 31, (Acts 1953, R.S., page 1078) authorizing the Governor to accept on behalf of the State the transfer of the trust, conditioned on consent of the tribe by appropriate resolution, and providing further:

"That the Governor is authorized to designate the State agency in which such trust responsibilities shall rest, and the agency so designated shall have authority to promulgate rules and regulations for the administration of the trust and the protection of the beneficial interests of the Indians in such lands and other assets."

By letter addressed to your Board, Governor Allan Shivers designated said Board as the agency to administer the trust.

Your first question is as to whether your Board in cooperation with the Indian tribe may offer an oil and gas lease on said lands. We do not construe the Concurrent Resolution aforesaid as granting any such power. Even if we were mistaken

in this interpretation, however, it is well settled that substantive rights of this character may be created only by statute and not by resolution.

In Caples v. Cole, 129 Tex. 370, 102 S.W.2d 173; rehearing den. 129 Tex. 370, 104 S.W.2d 3, the Court said:

"The Constitution has clearly prescribed the method to be pursued in the enactment of laws and their amendments. . . . The Legislature prescribes the method by which a purchaser may acquire lands belonging to the State. All sales of public lands must be authorized by law."

It was held in such case that a resolution was insufficient to grant such authority. For similar holdings, see Terrell Wells Swimming Pool v. Rodriguez, 182 S.W.2d 824, error ref.; Humble Oil & Refining Co. v. State, 104 S.W.2d 174, error ref.; Mosheim v. Rollins, 79 S.W.2d 672, error dism.; City of San Antonio v. Micklejohn, 89 Tex. 79, 33 S.W. 735. And see 31 T.L.R. 417 (Comment, 1953).

In Attorney General's Opinon No. O-6827, written by Honorable William J. Fanning, now a Justice of the Texarkana Court of Civil Appeals, it was held that House Concurrent Resolution No. 41 of the 49th Legislature was "ineffective and does not authorize the Land Commissioner of Texas to sell the land described in the resolution. For the Commissioner to be so authorized an act of the Legislature would be required and a mere resolution is wholly insufficient". And see Attorney General's Opinions Nos. O-5241, O-3697, O-193 and R-1792. We are further of the opinion that the general statutes giving your Board control and management of the reservation do not give your Board authority to grant oil and gas leases.

The authority to lease the 3071 acres, however, is not dependent on such concurrent resolution. Your Board succeeded the Board of Control in the control and management of the State eleemosynary institutions, now designated as "Texas State Hospitals and Special Schools", within which category the statute specifically includes "the Alabama and Coushatta Indian Reservation, Livingston, Texas". Article 3174b, V.C.S. The 3071 acres is a part of such reservation.

Oil and gas leases on lands of eleemosynary institutions were specifically permitted by Article 3183a. Subsequent to the enactment of such statute, Article 5382d, V.C.S., was adopted in 1951 setting up procedures for the leasing of State department lands. The act repealed all conflicting laws, and since its adoption, it has been uniformly construed by the General Land Office, the Attorney General and the other State agencies

involved as repealing and superseding Article 3183a, except as to Sec. 17a which forbids the leasing of certain named State parks. That this was the intention of the statute is made clear in the following language of the emergency clause of said statute (Acts 1951, ch. 325, page 556):

> "The fact that the General Land Office has a large list of prospective bidders on oil and gas leases, and the General Land Office is generally known throughout the oil and gas industry as the leasing agency for the State and that confusion exists in the oil and gas industry because of the large number of Boards for Lease in existence, all of which makes it desirable that the leasing of lands owned or controlled by the various departments, agencies and boards be done under a uniform law and administered by one agency . . . creates an emergency. . ."

All "eleemosynary" tracts and State park tracts leased since the enactment of such statute in 1951 have been leased under the said Article 5382d, rather than under Article 3183a. We reaffirm the correctness of such departmental construction.

Section 1 of Article 5382d provides in part as follows:

> "There is hereby created Boards for lease of lands owned by any Department, Board or Agency of the State of Texas, which Boards for Lease shall consist of the Commissioner of the General Land Office, who shall be chairman, the Attorney General and the particular President or Chairman of the Board or Agency, or Head of the Department charged with the responsibility of management or control of lands now owned by, or that may hereafter be owned by, or held in trust for, the use and benefit of said Department, Agency or Board."

The emergency clause quoted in the preceding paragraph makes it clear that the legislative intent was that the act should apply to land "owned or controlled" by a State department. Title to the land, under Public Law 627, supra, is in the State of Texas "in trust for the benefit of the Indians of the Alabama and Coushatta tribes of Texas". In a strict sense, ownership of all State department lands is in the State of Texas. Deeds are sometimes taken in the name of the department, very often in the name of the State for the use and benefit of a named department, and sometimes simply in the name of the State. The caption of the 1951 act includes the following:

"Providing for the leasing of lands now owned
by . . . or held in trust for the use and benefit
of State departments, agencies or boards. . ."

Clearly the land in question is held in trust by the State for
the use and benefit of the Alabama-Coushatta Indian Reservation,
which is an agency of your Board, and hence the land is held in
trust for the Board itself. Considering the act as a whole, we
believe it was clearly intended by the Legislature to cover
State land under the management and control of a particular de-
partment.

It follows from what we have said that we are of the
opinion that the 3071 acre tract may properly be leased for oil
and gas under the provisions of Article 5382d, subject, however,
to approval by the Indians as provided in Public Law 627, supra.
This answers your second question.

Your third question inquires as to the proper disposi-
tion of the proceeds from the leasing of such lands. Your at-
tention is respectfully directed to Section 16 of Article 5382d,
which provides in part as follows:

"Any amounts received under and by virtue of
this Act shall be deposited in the State Treasury
to the credit of special funds to be known as the
'(appropriate Department, Board or Agency) Special
Mineral Fund', which funds are hereby created, and
shall be used exclusively for the benefit of the
appropriate Department, Board or Agency; provided,
however, no money shall ever be expended from these
funds except by legislative appropriation and then
for the purposes and in the amounts stated in the
Act appropriating same."

As stated in the statute, a specific legislative appropriation
is required before such proceeds may be spent.

### SUMMARY

Because the Act of 1854 forbids the leasing
or alienation of any part of the original 1280
acre tract in the Alabama-Coushatta Indian Reser-
vation, such land may not be leased for oil and
gas. The remaining 3071 acres of said reservation
which were conveyed by the United States to the
State of Texas under a 1954 Congressional Act may
be so leased under the provisions of Article 5382d,

V.C.S., with majority approval of the Tribe. Such statute requires that the proceeds from such a lease are placed in a special fund and may not be spent except by legislative appropriation.

Yours very truly,

WILL WILSON
Attorney General of Texas

By J. Arthur Sandlin
J. Arthur Sandlin
Assistant

JAS:dhs

APPROVED:

OPINION COMMITTEE:
Geo. P. Blackburn, Chairman
Richard B. Stone
L. P. Lollar

REVIEWED FOR THE ATTORNEY GENERAL
BY:
    W. V. Geppert