

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

January 25, 1993

Mr. Marvin J. Titzman
Executive Director
Texas Surplus Property Agency
P. O. Box 8120
San Antonio, Texas 78208-0120

Opinion No. DM-197

Re: Whether the Texas Surplus Property Agency is authorized to obtain fire and casualty insurance to protect agency buildings, and related questions (RQ-53)

Dear Mr. Titzman:

On behalf of the Texas Surplus Property Agency, you ask whether the agency is authorized to obtain fire and casualty insurance to insure its warehouses.

The Texas Surplus Property Agency was created pursuant to V.T.C.S. article 6252-6b and given responsibility for receiving, warehousing, and redistributing surplus federal property pursuant to the Federal Property and Administrative Services Act of 1949, title 40 of the United States Code section 484(j). V.T.C.S. art. 6252-6b, § 4(a), (b); see Attorney General Opinions JM-639 (1987); JM-417 (1985) (discussing duties of Texas Surplus Property Agency). It is also responsible for warehousing and redistributing surplus state property. V.T.C.S. art. 6252-6b, § 4(n). Pursuant to this statutory authorization, the agency operates warehouses in Houston, Lubbock, and San Antonio.

In August 1984, the state auditor recommended that the agency obtain insurance to cover the buildings it owned. In March 1985, the Texas Surplus Property Agency obtained fire and casualty insurance to cover its warehouses. In January 1991, the Comptroller of Public Accounts advised the agency that a voucher submitted to the comptroller requesting payment for fire and casualty insurance would not be paid. The comptroller stated that "a state entity may not purchase fire insurance for its buildings and the contents therein unless it has both explicit or implied statutory authority and a specific appropriation for that purpose." The comptroller concluded that there was no such authority in the present case.

Attorney General Opinion JM-551 (1986) determined that state policy prevented a state agency from purchasing insurance policies on state buildings or their contents, unless legislation expressly authorized the purchase. The opinion relied on Senate Concurrent Resolution No. 3 of 1921 which stated that it was the policy of the state to self-insure[1] its

---

[1]Self-insurance is the common business practice of "setting aside a fund to meet losses instead of insuring against such through insurance." BLACK'S LAW DICTIONARY 1360 (6th ed. 1990).

buildings through a state self-insurance fund and to thereafter prohibit state agencies from obtaining property insurance to cover state buildings.[2] S.C.R. 3, Acts 1921, 37th Leg., 2d C.S., at 369.  A long line of attorney general opinions have relied on this concurrent resolution to reach the same conclusion.  *See* Attorney General Opinions JM-551 at 5; M-1257 (1972); C-193 (1963); V-722 (1948); O-6246, O-5824 (1944); O-3000 (1941) (relying on Attorney General Opinions O-201, O-184 (1939)); O-1762 (1940); O-1100, O-842, O-201, O-184 (1939); *see also* Attorney General Opinions JM-547 (1986) (state agency may insure mail in transit; cost is an additional cost of postage); M-581 (1970) (Texas Employment Commission may purchase property insurance for buildings with funds granted by federal government and appropriated by legislature for this purpose).

The concurrent resolution is not state law.  Article III, section 30 of the Texas Constitution requires that laws must be passed by a bill rather than a resolution; therefore a resolution does not have the same force and effect as a law introduced by a bill.  *See Saunders v. State*, 341 S.W.2d 173, 178 (Tex. Crim. App. 1960); *Caples v. Cole*, 102 S.W.2d 173, 176-77 (Tex. 1937); *Conley v. Texas Div. of the United Daughters of the Confederacy*, 164 S.W. 24, 26 (Tex. Civ. App.—Austin 1913, *writ ref'd*).  Moreover, the proposed self-insurance scheme, which was the basis for the concurrent resolution's policy that "no insurance policies shall be taken out upon any of the public buildings of this state," was never adopted.  We have found no Texas statute that establishes a state self-

---

[2]Senate Concurrent Resolution No. 3 states in relevant part:

> Whereas, The insurance data and information tabulated . . . [by] the State Board of Control indicate that a substantial saving can be made to the State in carrying its own insurance; therefore be it
>
> Resolved, by the Senate of the State of Texas, the House of Representatives concurring herein, That *hereafter it shall be and is the fixed policy of this State that the State shall carry its own insurance upon State buildings and contents, and that no insurance policies shall be taken out upon any of the public buildings of this State, nor upon the contents thereof,* and the State Board of Control and all other Boards having charge of buildings of the State, and the contents of such buildings, are hereby instructed not to have such buildings nor property insured, notwithstanding there may be items in the appropriation bills authorizing the expenditure of money for the payment of insurance premiums.
>
> *Provided that it is declared to be the policy of the State hereafter at the end of each two years period to set aside approximately one per cent of the value of all public buildings owned by the State, as a sinking fund until ten per cent of the total value of all such buildings has been accumulated,* and that this sinking fund shall be invested in school bonds in the school districts of this State. . . .

Acts 1921, 37th Leg., 2d C.S., at 369 (emphasis added).

insurance fund,[3] and the General Services Commission has confirmed that the state has never established the self-insurance fund proposed in the concurrent resolution.

We conclude, however, that the much-reiterated prohibition against the purchase of property insurance by state agencies in the absence of specific legislative authorization does express state policy. This policy is reflected in article VII, section 17 of the Texas Constitution, which establishes a special fund to be used by specified institutions of higher education for land acquisition, building construction, and other related purposes. The institutions of higher education that benefit from the special fund are barred from receiving additional general revenue funds

> for acquiring land . . . , for constructing or equipping buildings or other permanent improvements, or for major repair and rehabilitation of buildings or other permanent improvements except that:
>
> (1) in the case of fire or natural disaster the legislature may appropriate from the general revenue an amount sufficient to replace the uninsured loss of any building or other permanent improvement .
>
> . . . .

Tex. Const. art. VII, § 17(j).

Moreover, the legislature has determined that the state shall not purchase insurance even to cover certain liabilities toward third parties. The state is self-insuring with respect to injuries of state employees compensable under the worker's compensation statute for state employees. V.T.C.S. art. 8309g, § 2. The Texas Tort Claims Act authorizes governmental units to purchase insurance to protect the unit and its employees against claims under the act, Civ. Prac. & Rem. Code § 101.027(a), but the legislature has consistently barred the use of appropriated funds for this purpose. *See* Acts 1991, 72d Leg., 1st C.S., ch. 19, art. V, § 53, at 1032; Attorney General Opinions JM-889 (1988); JM-551 (1986); H-900 (1976).

Similarly, under the Texas Disaster Act of 1975 the legislature authorized state agencies to purchase property damage insurance under limited circumstances:

---

[3]Article 715c, V.T.C.S., authorizes state agencies to establish a self-insurance fund consisting of bond proceeds or other available funds "to protect the governmental unit and its officers, employees, and agents, from any insurable risk or hazard." V.T.C.S. art. 715c, § 4(a). This language appears broad enough to include property insurance, but other provisions suggest that "the legislature had liability insurance in mind. Section 6 of article 715c, V.TC.S., provides that "the establishment and maintenance of a self-insurance program by a governmental unit does not constitute a waiver of immunity or defense of the governmental unit or its employees." Moreover, section 5(a) of article 715c allows governmental units to participate in risk retention groups created under the federal Liability Risk Retention Act, enabling them to spread the risk of liability for damages due to "injuries to other persons, damage to their property, or other damage or loss to such other persons." 15 U.S.C. §§ 3901, 3901(a)(2)(A).

> Property damage insurance covering state facilities may be purchased
> by agencies of the state if necessary to qualify for federal disaster
> assistance funds.

Gov't Code § 418.172(a).[4] It is noteworthy that the legislature adopted an authorization to purchase property insurance that is no broader than necessary to qualify for federal disaster assistance.

In summary, the policy expressed in the concurrent resolution is embodied in various enactments concerning the purchase of insurance by state agencies. We cannot ignore this evidence of legislative intent. Accordingly, we conclude that the Texas Surplus Property Agency may not purchase property insurance to cover its warehouses in the absence of statutory authorization. We find no basis in the language of article 6252-6b, V.T.C.S., for concluding that the legislature intended the Texas Surplus Property Agency to be able to purchase property insurance. Nor does the federal law or regulations adopted thereunder authorize the agency to purchase property insurance to carry out its responsibilities in distributing surplus federal property. A federal rule applicable to the agency provides that a state agency is not required to carry insurance on federal surplus personal property as a condition for acquiring it to distribute to eligible recipients. 41 C.F.R. § 101-44.205(c). The rule governs the distribution of the proceeds of property insurance where the state has it. It is not relevant to your question. Accordingly, the Texas Surplus Property Agency does not have authority to purchase property insurance to cover its warehouses.

You also ask whether the State of Texas is obligated to act as a self-insurer to cover fire or casualty damage to agency buildings. As previously discussed, there is no state self-insurance fund to cover state property. In Attorney General Opinion JM-551 at 5, this office stated that it is the policy of this state to make "special appropriations to repair and replace facilities and equipment destroyed or damaged by . . . fire, flood, windstorm, and hurricane." See Acts 1983, 68th Leg., ch. 3, at 7 (supplemental appropriation to repair and renovate areas of capitol damaged by fire); Acts 1981, 67th Leg., chs. 628, 585, 83 (appropriations to Pan American University for hurricane damage, to North Texas State University for wind damage, and to Texas Forest Service of the Texas A & M University System for windstorm damage). Thus, the cost of repairing or replacing damaged state property is funded by special legislative appropriation, rather than by insurance proceeds or a self-insurance fund. Appropriation of state money is a legislative function, *Bullock v. Calvert*, 480 S.W.2d 367 (Tex. 1972), and it is within the legislature's power to decide whether an appropriation should be made to repair or replace particular property. *See generally* Tex. Const. art. III, §§ 1, 35; art. VIII, § 6.

---

[4]We do not have sufficient information to determine whether section 418.172(a) authorizes the Surplus Property Agency to obtain property insurance. *See* 42 U.S.C. §§ 4012a, 5154; 56 Fed. Reg. 64558 (1991) (Interim Rule -- to be codified at 44 C.F.R. 206).

## S U M M A R Y

State agencies may not purchase property insurance without legislative authorization. The Texas Surplus Property Agency does not have authority to spend appropriated funds to purchase property insurance to cover its warehouses.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General